[No. 15027.   Department Two.   May 1, 1919.]

## In the Matter of the Estate of MARY ARKWRIGHT HUTTON.[1]

WILLS (68)—CONSTRUCTION—DEVISE OR BEQUEST TO CLASS—SUBSTITUTION. A bequest to a class, designated as "the children of my deceased half-brother," made at a time when the testatrix knew that one son had been dead for several years, was not intended to include as a substitute a child of such deceased son, pursuant to Rem. Code, § 1328, providing for the substitution of lineal descendants in case of a devise to any child or relative who shall die before the testator; notwithstanding there be no distinction between void and lapsed legacies in applying such substitution statutes.

WILLS (51)—COSTS—PERSONS LIABLE—UNSUCCESSFUL HEIR. In a proceeding to construe a will, resisted by appellant's guardian *ad litem* in good faith, there is no authority to award costs on appeal or compensation for counsel fees to the unsuccessful contestant.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered July 11, 1918, upon findings in favor of an executor and devisee, construing a will and decreeing distribution of the estate. Affirmed.

*W. H. Winfree,* for appellant Lillian Dorothy Arkwright.

*Luby & Pearson,* for respondent.

PARKER, J.—Mary Arkwright Hutton died in Spokane county on October 6, 1915, being then a resident of that county. She left a nonintervention will, which was made by her on December 2, 1913, naming her husband, L. W. Hutton, executor thereof. She made no testamentary disposition of her property other than as evidenced by the following language found in her will:

"First:  I give and bequeath unto my half-sister, Eliza Grombacher, of Cleveland, Ohio, the sum of One Thousand Dollars.

[1]Reported in 180 Pac. 882.

"Second: I give and bequeath unto my half-brother, Lyman B. Arkwright, of Youngstown, Ohio, the sum of One Thousand Dollars.

"Third: I give and bequeath unto my half-brother, Delaney Arkwright, of Youngstown, Ohio, the sum of One Thousand Dollars.

"Fourth: I give and bequeath unto the children of my deceased half-brother, William Arkwright, late of Youngstown, Ohio, the sum of One Thousand Dollars.

"Fifth: I direct my executor, hereinafter named, to contribute out of the funds belonging to my estate the sum of Five Thousand Dollars toward the completion of a labor temple in the city of Spokane, Washington, payable at his discretion when such Temple shall have been substantially constructed.

"Sixth: All the rest, residue and remainder of my estate, both real and personal, wherever situated, I give devise and bequeath to my husband, L. W. Hutton, with full power to use, retain, hold, manage, invest and keep the same invested, and receive and retain the rents, issues and profits thereof, for and during the term of his natural life, if he should so long remain my widower, and upon his remarriage or death, or in case he shall not survive me, I give devise and bequeath to the said Eliza Grombacher, to the said Lyman B. Arkwright, to the said Delaney Arkwright, and to the children of the said William Arkwright, each an undivided one-fourth part thereof, absolutely and in fee.''

William Arkwright, the deceased half-brother of Mrs. Hutton, named in the fourth and sixth paragraphs of her will, died long prior to her decease, leaving several children, one of whom, named Lyman Arkwright, died on August 19, 1904, which date, it will be noticed, was some nine years prior to the making of the will by Mrs. Hutton. At the time of, and long prior to the making of, her will, Mrs. Hutton was fully advised and well knew that Lyman Arkwright, the son of her deceased half-brother, William Arkwright, had died in the year 1904. Lyman Arkwright left a daugh-

ter, Lillian Dorothy Arkwright, the grand-niece of Mrs. Hutton. L. W. Hutton, the executor, acquired the entire interest of each and all of the legatees and devisees entitled to take under the will, except the possible interest which Lillian Dorothy Arkwright might take by virtue of being a daughter of Lyman Arkwright.

L. W. Hutton, the executor, having fully administered the estate, and being desirous of having the question of whether or not Lillian Dorothy Arkwright shall take under the will, on March 27, 1918, filed in the probate proceeding in the superior court for Spokane county, wherein the will had been proven and the estate administered, in so far as it was necessary to be administered under the direction of the court, his petition for the distribution of the remaining property of the estate to himself, as legatee and devisee under the will and as assignee of the entire interest of each and all of the other legatees and devisees entitled to take under the will, alleging that he is advised and believes that Lillian Dorothy Arkwright took no estate by the terms of the will, and has no interest in the estate. This petition was filed in pursuance of § 92 of our new probate code, Laws of 1917, p. 666, providing for the rendering of a decree determining who is entitled to take under a nonintervention will.

The matter of distribution presented by the petition coming on for hearing in the superior court, timely notice thereof having been given, and a guardian *ad litem* to represent Lillian Dorothy Arkwright, who is a minor, having been appointed, evidence was introduced, which, taken with the record in the proceeding already made, shows the facts as above summarized; and the matter being submitted for final decision upon the merits, the court decreed distribution of the re-

maining property of the estate, as prayed for by L. W. Hutton as executor and individually, the court holding that Mary Arkwright Hutton, deceased,

"did not intend or purpose to make either the said Lyman Arkwright or the said Lillian Dorothy Arkwright a beneficiary of her said will, and that the said Lillian Dorothy Arkwright took and takes no estate or interest thereunder either in her own right or as sole lineal descendant of the said Lyman Arkwright."

From this disposition of the matter, the guardian *ad litem* of Lillian Dorothy Arkwright has, in her behalf, appealed to this court.

Counsel for appellant Lillian Dorothy Arkwright, contend that she is entitled to take in the place of her father Lyman Arkwright, under the will of her great aunt Mary Arkwright Hutton, by virtue of § 1328, Rem. Code, which reads:

"When any estate shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, having lineal descendants, such descendants shall take the estate, real and personal, as such devisee would have done in case he had survived the testator."

Had the appellant's father, Lyman Arkwright, been living at the time of the making of the will by Mrs. Hutton, he being a son of William Arkwright, the deceased half-brother of Mrs. Hutton, whose children are designated as beneficiaries in the fourth and sixth paragraphs of the will, this contention would seem to be well grounded. Or had Mrs. Hutton in her will designated her nephew Lyman Arkwright by name or in some other manner specifically pointed him out as a beneficiary under her will, though then knowing that he was dead, it would also seem, under the weight of modern authority, that appellant would take in his place. But such is not our problem here to be solved.

We are dealing with a gift to a class, designated in the will as "the children of my deceased half-brother, William Arkwright," the testatrix knowing at the time of making the will that there were several children of William Arkwright then living, and knowing that one, appellant's father, was then dead. The real question here to be answered is, did Mrs. Hutton intend to include in the class she designated as "the children of my deceased half-brother William Arkwright," the then deceased son of William Arkwright, to wit, Lyman Arkwright, the father of appellant? The correct answer to this question will become decisive of this case; for, under § 1328, Rem. Code, appellant's right to take depends upon her right of substitution in the place of one of the class designated by Mrs. Hutton in the will by the language above quoted.

We do not understand counsel for appellant to here contend that the language, "the children of my deceased half-brother William Arkwright," as used in the will by Mrs. Hutton, includes "grandchildren" of her deceased half-brother. Indeed, we think there would be no sound ground upon which to rest any such contention, since manifestly the word "children" was used in the will in its ordinarily accepted meaning, which does not include grandchildren. 40 Cyc. 1448; *In re Roberts' Estate,* 84 Wash. 163, 146 Pac. 398.

It is therefore plain, we think, that appellant can take under the will, if at all, only as she may be substituted for one of the class designated by the language of the will above quoted. So the question remains, Was her father, Lyman Arkwright, who was the deceased son of William Arkwright at the time of the making of the will by Mrs. Hutton, intended by her to be a member of the class of beneficiaries designated in her will, as though he were living at the time she made the will?

It was the rule of the common law, in the absence of any statute similar to § 1328, Rem. Code, that a legacy or devise to a person deceased at the time of the making of the will was void *ab initio,* and that a bequest or devise to a person who died after the making of the will and before the death of the testator, would lapse, so that no one could take thereunder. 2 Alexander, Wills, § 1101; 1 Jarman, Wills (6th ed.), 423; 40 Cyc. 1052, 1925. Some of the American courts have noticed and been somewhat influenced by the distinction recognized at common law between void and lapsed legacies and devises, in their application of statutes similar to Rem. Code, § 1328, which now exist in most if not all of our states. It seems, however, that the present view of such statutes, adopted by a majority of the courts, is that, when the legacy or devise is to a person named, or otherwise specifically designated in the will, who is dead and even known by the testator to be dead at the time of the making of the will, the legacy or devise is not void, in the sense that those whom the statute substitutes for the deceased devisee or legatee, shall not be permitted to take under the will. In other words, the majority rule seems to be that, in the application of such statutes, there is no occasion for making any distinction between void and lapsed legacies, in so far as the rights of those whom the statute substitutes in the place of the deceased legatees or devisees are concerned. *Pimel v. Betjemann,* 183 N. Y. 194, 76 N. E. 157, 2 L. R. A. (N. S.) 580.

Counsel for appellant invoke this view of the statute, and seem to argue that it is of controlling force in our present inquiry. We may concede that there should no longer be any distinction between void and lapsed legacies or devises, in determining the application of § 1328, Rem. Code, and similar statutes; but we think

that is not a question of any serious moment in our present inquiry. The question still remains, Did Mrs. Hutton intend to designate her deceased half-brother William Arkwright's deceased son, Lyman Arkwright, the father of appellant, as one of the class of beneficiaries designated in her will as the "children of my deceased half-brother William Arkwright?" The decisions of the courts of this country are not in harmony upon this question, but it seems to us that the weight of authority, as well as the better reason, supports the view that such a class designation of beneficiaries in a will does not evidence an intent of the testator to include in such class one who is dead and known by the testator to be dead at the time of the making of his will; though if such a one were then living, he would be one of such class. We will now notice some of the decisions of the courts adopting this view of the law.

In *Davie v. Wynn*, 80 Ga. 673, 6 S. E. 183, there was involved a residuary gift made by a testator, reading: "Share and share alike, to my nephews and nieces, the children of my deceased brother, John L. Wynn, and of my deceased brother-in-law, John Wilkinson." Holding that the deceased's nieces, who died before the making of the will and who would have been of the designated class had they been living at that time, did not take under the will by virtue of a statute similar to § 1328, Rem. Code, Justice Blandford, speaking for the court, said:

"The will gave the property to a class, to wit, the testator's nephews and nieces, the children of his deceased brother, John L. Wynn, and of his deceased brother-in-law, John Wilkinson. At the death of the testator, the ancestors of these complainants were not in being and were not of the class to whom this property was devised and bequeathed; and hence the complainants can take nothing under this clause of the will.

. . . It was contended by counsel for the plaintiffs in error that, under section 2462 of the code, these representatives of the dead nieces would come in. That section is as follows: 'If a legatee dies before the testator, or is dead when the will is executed, but shall have issue living at the death of the testator, such legacy, if absolute and without remainder or limitation, shall not lapse, but shall vest in the issue in the same proportions as if inherited directly from their deceased ancestors.' . . . The case of *Cheney, Ex'r. v. Selman, Guardian,* 71 Ga. 384, is relied on by counsel for the plaintiffs in error. In that case the testator devised certain property to the 'children of Tilda Cleckler.' At the death of the testator, Cleckler was dead, and her only child, a son, was also dead. The son left two children, who were in life when the testator died; and these children contended that they were entitled to represent their deceased father. And the court held, under the section of the code above cited (§ 2462), that to prevent a lapse of the legacy, the property, under the will, should go to these children. That decision is doubtless correct; for the bequest in that case was the same as if it had been made to the son of Tilda Cleckler; he was dead at the time the will was made and at the death of the testator.; and under this section of the code, to prevent a lapse of the legacy, the property vested in the·children. But in this case there is no lapse of the legacy. Here, it appears from the bill filed by the complainants, there are other nephews and nieces who fall within the class designated by the testator. So there is a marked distinction between the two cases.''

That decision was adhered to by the Georgia court in the later case of *Tolbert v. Burns,* 82 Ga. 213, 8 S. E. 79.

. In *Howland v. Slade,* 155 Mass. 415, 29 N. E. 631, the court had under consideration a testamentary gift to "first cousins," and also the application of a statute, in substance the same as ours. Justice Morton, speaking for the court, said:

"It is clear that the issue of the first cousins who died before the making of the will cannot take under it. There is nothing in the will to indicate a purpose on the part of the testator that they should share his bounty, and, in the absence of such an intention, it is plain, upon the authorities, that they are not to be regarded as beneficiaries. *Merriam v. Simonds,* 121 Mass, 198, 203. *In re Webster's Estate,* 23 Ch. D. 737. *In re Chinery,* 39 Ch. D. 614. *Groves v. Musther,* 43 Ch. D. 569. *In re Hotchkiss,* L. R. 8 Eq. 643. *Hebergham v. Ridehalgh,* L. R. 9 Eq. 395. At the time when the will was made, they did not fall within the description of first cousins, and, without something to show that such was to be the case, they could not take as substitutes for or in the place of the first cousins who were dead, because these could not themselves have taken as members of the original class."

In the later case of *White v. Massachusetts Institute of Technology,* 171 Mass. 84, 50 N. E. 512, this view of the law is adhered to.

In *In re Harrison's Estate,* 202 Pa. 331, 51 Atl. 976, there was involved a gift by a testator to "the children of my sisters in equal shares." One daughter of a sister of the testator died before the execution of the will. Appellant, a child of such deceased daughter, claimed under the will the share her mother would have taken as one of the designated class of beneficiaries, had she been living at the time of the making of the will. The supreme court, adopting the language of the superior court, the intermediate appellate court of that state, in holding that the appellant could not take under the will, said in part:

"The appellant now contends, however, that being of the issue of Teresa L. C. Anderson, the daughter of a sister of the testatrix who died during the lifetime of the latter and prior to the execution of the will, she is entitled to participate in the distribution of this fund by force of the provision of the act of July 12,

1897, P. L. 256, 'No devise or legacy hereafter made in
favor of a brother or sister, or of brothers or sisters
of any testator, or in favor of the children of a brother
or sister of any testator, whether such brothers or sis-
ters, or children of brothers or sisters be designated
by name or as a class, such testator not leaving any
lineal descendants, shall be deemed or held to lapse or
become void by reason of the decease of such devisee
or legatee, in the lifetime of the testator, if such de-
visee or legatee shall leave issue surviving the testa-
tor; but such devise or legacy shall be good and avail-
able in favor of such surviving issue, with like effect as
if such devisee or legatee had survived the testator,
saving always to every testator the right to direct
otherwise.' This legislation is not and was not in-
tended to have any bearing upon the interpretation of
wills; its effect is confined to the manner in which the
intention of the testatrix, as ascertained from the
words of the will, shall be carried into execution.
Whether the person within the class designated by the
act, who has died during the lifetime of the testator,
was a legatee or devisee within the intention of the
testator must first be ascertained from the language
which he used in disposing of his property. When the
devise is to a person by name it is conclusive as to the
intention of the testator that that person should take,
and the intention of the testator being established, the
subject of the devise or bequest will, upon the death of
the testator, be good and available in favor of the issue,
when the primary devisee or legatee has died during
the lifetime of the testator. This is the effect of legis-
lation of this character, even in a case when the pri-
mary devisee was dead at the time the testator spe-
cifically designated him as the object of his bounty:
*Minter's Appeal,* 40 Pa. 111; *Winter v. Winter,* 5 Hare
306.

"The legislation in question was no doubt enacted
for the purpose of changing the law, as it had been
determined in *Gross's Estate,* 10 Pa. 360, and in kin-
dred cases, that in case of a devise to children of
brothers and sisters, as a class, only those children
who were in existence at the death of the testator were

entitled, to the exclusion of the representatives of children dying before the testator but after the date of the will. A bequest to a number of persons, not named but answering a general description is a gift to them as a class; this rule of construction is intended to settle the testator's intention, unless the will itself shows that he intended otherwise: *Denlinger's Estate,* 170 Pa. 104. Prior to the act of 1897, the persons who constituted a class described by the testator would have been ascertained as of the time when the legacy vested and it is only in case of a devise or bequest to a class, that the legislation has worked any change in the law, for devisees and legatees *nominatim* standing in the same degrees of relationship were protected by the act of May 6, 1844, P. L. 565. The effect of the act of 1897 is to provide that where one is within a class designated by the testator as the object of his bounty, the devise or legacy to him shall not lapse by his death during the lifetime of the testator, but the person so dying must have been a member of the class at some time in the period during which the will remained ambulatory, between the execution of the will and the death of the testator. . . . The act was not intended to set up a new rule for the construction of wills or to include as primary legatees persons who did not come within the meaning of the language employed by the testator; its purpose was to provide for the substitution of the issue upon the death of one who was at the date of the will or subsequently came within the class to which the devise or bequest was made, and there was, therefore, nothing which the appellant was entitled to take by substitution.''

In *In re Nicholson's Will,* 115 Iowa 493, 88 N. W. 1064, 91 Am. St. 175, there was under consideration a residuary clause in a will reading:

''After paying all the foregoing amounts, I give and bequeath the balance of my property to be divided equally between all my nephews and nieces.''

A niece of the testator died before the making of the will. A son of such deceased niece was claiming un-

der the will, invoking the statute of that state reading
as follows:

"If a devisee die before a testator, his heirs shall
inherit the property devised to him, unless from the
terms of the will a contrary intent is manifest."

Judge Deemer, speaking for the court, holding that
the claimant could not take under the will as a substi-
tute for his mother who had died before the making
of the will, though she would have been one of the
class designated as beneficiaries had she been living
at that time, said:

"Under the common law rule, the members of the
class to whom testator left his residuary estate would
be determined upon the day of his death; and, as ap-
plicant herein is neither a nephew nor a niece, he would
be excluded.  Applicant's counsel contend, however,
that the statute which we have quoted modifies this
rule to this extent: that, although the members of the
class are to be determined as upon the day of the tes-
tator's death, yet, as the applicant is an heir of one of
that class, who would have taken under the will, had
his mother survived, he is entitled to her share. . . .
If a deceased beneficiary is specifically named in the
will, this, perhaps, is a sufficient indication that the
testator intended his heirs to take, under the statute
before quoted, as substitutional or representative de-
visees.  But where the gift is to a class, of which there
are many members, it is reasonable to suppose that
the testator had in mind only those of that class who
were living at the time he made his will.  To apply the
rule to the instant case, when testator made his will he
had several nephews and nieces living.  He also had
at least one grand-nephew, whose mother had been
dead for more than 10 years.  In the residuary clause
of his will he devised his remaining property to his
'nephews and nieces', share and share alike.  Did he
intend by this description to give any part of it to this
grand-nephew?  Surely not, for it would have been
easy to include him if he had so desired.  Taking the
will by its 'four corners', and reading it in the light of

the admitted facts, we hardly think one unversed in the law would say that testator intended to include applicant in the class described as 'nephews and nieces.' If he had intended to include the grand-nephew, we think it more likely that he would have named him. Nephews and nieces are here the primary devisees. Nothing whatever is given to their issue, except as they may be substituted under the statute. In order to claim under the will, this substituted legatee must point out the original legatee in whose place he would stand. At the date of the will none but living nephews and nieces of the testator could have taken. The issue of the one who was dead at that time can show no object of substitution, and to give him an original legacy would be, in effect, to make a new will for the testator.''

In *Pimel v. Betjemann,* 183 N. Y. 194, 76 N. E. 157, 2 L. R. A. (N. S.) 580, the court had under consideration a state of facts and a statute similar to the facts and the statute here involved. In that case Chief Judge Cullen, speaking for the court, made observations in harmony with the view of the law expressed in the above noticed decisions, as follows:

''Nothing is better settled in the law of wills than that the term 'children' does not include grandchildren or more remote descendants, unless there is something in the will to show that the word was used in a broader sense. This is not based on any technical rule of law; on the contrary, it is founded on the ordinary meaning of the word and the presumption that the testator has used the term in its ordinary sense. The decision below overturns this rule and declares that a devise or bequest to children of the testator includes grandchildren. The distinction between a dead child expressly named or otherwise identified in a will and one who must take under the designation of a class seems to me very plain. Where the testator names the deceased child there can be no room for doubt that he intends him or his issue to take, and the statute gives effect to that intent. Where, however, a testator writes or speaks of his children in general terms he does not

include grandchildren. So the courts have uniformly held, and such, I think, the experience of all of us will confirm as being the actual fact. So, also, there is a plain distinction between the death of a member of a class subsequent to making the will and a death prior to that time. In the first case it is both possible and probable, unless some provision for the contingency is made in the will, that the testator did not anticipate its occurrence. In the latter the occurrence is not contingent but has actually happened, and, therefore, the fact is necessarily present in the testator's mind except in some exceptional case. Take the present case. The plaintiff's mother had died five years before the will was made and of her death the testator was entirely aware. If he had intended to leave a legacy to his grandchild he would have said so, instead of leaving his intention to be worked out in an indirect manner . . ."

There was a dissenting opinion rendered by a minority of the court in that case, but the majority view of the law has been adhered to and apparently has become the settled law of New York, as shown in *In re Turner's Will*, 208 N. Y. 261, 101 N. E. 905, Ann. Cas. 1914D 245.

These decisions seem to be quite in harmony with the settled law of England, as shown by the decision of the supreme court of judicature rendered in *In re Musther*, 43 Ch. Div. L. R. 569, the decision being stated in substance in the syllabus of the case as reported, as follows:

"A testatrix, by her will, gave the residue of her property to be equally divided between her nephews and nieces, sons and daughters of her late brothers, G., J., W. and C., and then proceeded: 'but should any of them be dead before me I then direct that his or her share shall be equally divided between his or her children':—*Held*, by the court of appeal, affirming the decision of Kay, J., that the children, living at the death

of the testatrix, of nephews or nieces who were dead at the date of her will, did not take.''

We have noted that the decisions of the American courts upon this question are not harmonious. We think, however, the decided weight of authority, as well as the better reason, supports the view of the courts rendering the decisions above noticed. The decision of the Illinois court in *Kehl v. Taylor*, 275 Ill. 346, 114 N. E. 125, Ann. Cas. 1918D 948, we think may be regarded as the leading decision holding to the contrary, wherein are collated the decisions which that court regards as supporting its conclusion. We are of the opinion that appellant Lillian Dorothy Arkwright cannot take under the will of her great-aunt Mary Arkwright Hutton, by substitution in the place of her father, who was dead at the time of the making of the will and then known by Mrs. Hutton to be dead, though he would have been a member of the class of beneficiaries designated by the language of the will, had he been living at the time of its making.

The judgment is affirmed.

Appellant by her counsel has asked this court to deny to the respondent executor costs against her in this court, in the event of the affirmance of the trial court's judgment; and also to award compensation to her counsel as a charge against the estate for taking the appeal, whether the trial court's judgment be affirmed or reversed. This question seems to be rested upon the theory that appellant should be so favored, because the appeal was in any event justifiable. We are not cited any authority in support of these requests, and we know of none which would authorize our granting either of them. We therefore feel constrained to deny the requests. It is so ordered.

CHADWICK, C. J., HOLCOMB, and MOUNT, JJ., concur.