[No. 34487. Department Two. June 5, 1958.]

*In the Matter of the Estate of* MABEL C. GORDON, *Deceased.*
ALEX I. GORDON, *Appellant*, v. MORRIS PRESTON *et al.*,
*Respondents.*[1]

[1]Reported in 326 P. (2d) 340.

*Edwards E. Merges,* for appellant.

*Hay & Hamlin,* for respondents.

DONWORTH, J.—This is an appeal from an order admitting a will to probate after a hearing on two factual issues presented by the objections of Alex I. Gordon, surviving spouse of the testatrix, to the admission of the will to probate. This hearing was held in compliance with the directions of this court expressed in *Gordon v. Seattle-First Nat. Bank,* 49 Wn. (2d) 728, 306 P. (2d) 739 (1957).

As stated in our earlier decision, *supra,* the two issues involved are: (1) whether, *in fact,* the testatrix lacked testamentary capacity at the time she executed the will; and/or (2) whether, *in fact,* she was unduly influenced in the execution thereof by her brother, the principal beneficiary named therein.

Briefly stated, the situation of the parties may be described as follows:

Mrs. Gordon was fifty-two years of age at the time of her death on March 21, 1956. She was born in Seattle and had resided there for most of her adult life. In the latter part of 1948, she married appellant, whom she had known since he first came to Seattle in 1929. It was her third marriage. There was no issue of any of these marriages.

Appellant has been for many years employed as a me-

chanic by a Seattle automobile distributor. He and the decedent lived together in Seattle from the time of their marriage until her death, which resulted from a fire in their home.

Respondent, decedent's only brother, has resided for about thirty years in Glendale, California, where he is a member of the police force. He has two sons by his first wife, from whom he was divorced in 1951. Shortly thereafter, he married Dorothy Watson Preston, his present wife.

While still married to her second husband, Mrs. Gordon (then Mrs. Sutcliffe), on September 3, 1946, executed a will (by completing blank spaces on a printed form), making no provision for her then husband, and leaving all of her inherited personal effects to her brother, Morris Preston. That will contained no residuary clause.

On March 24, 1949, shortly after her marriage to appellant, Mrs. Gordon executed a second will, revoking the first, naming her husband, but making no provision for him, and naming her brother, Morris Preston, as principal beneficiary. This will was prepared by a Glendale, California, attorney, whom her brother had known in a business way for a number of years. Mrs. Gordon and appellant were at that time visiting her brother. She advised her brother of the execution of this will, but did not so advise appellant.

About April 1, 1954, Mrs. Gordon and appellant again visited her brother in Glendale. They stayed at the Preston home for about three weeks. Mrs. Gordon again contacted the same Glendale attorney who had prepared her 1949 will. On April 20, 1954, a third will was executed by Mrs. Gordon, revoking her prior will, naming, but making no provision for, appellant, making certain nominal legacies, naming her brother as principal residual beneficiary, and naming his wife as first contingent legatee. The testatrix also named certain cousins as second and third contingent residual legatees. Mr. Preston was again advised of the execution of this will, but appellant was not. Appellant first became aware that such will existed when Mrs. Gordon's safety deposit box in a Seattle bank was opened.

This will, to the probate of which appellant has filed objections, is the basis of the present controversy.

Before referring to the testimony, we must consider respondent's motion to dismiss this appeal on the ground that the case has become moot, because appellant qualified as administrator of decedent's community estate with the will annexed, and thereafter filed his final report and petition for discharge and noted them for hearing.

In support of his motion, respondent relies on the general rule that a party who voluntarily acquiesces in or recognizes the validity of a judgment or order against him impliedly waives his right to appeal therefrom.

We recognize the rule relied upon, but conclude that it is not applicable to this case. Appellant's qualification as administrator of the community property was a right given by statute (RCW 11.28.030), irrespective of the validity of the will. The order appealed from required him to file his final account within twenty days thereafter. He complied with this order prior to the expiration of the thirty-day period within which he had the right to appeal. When he perfected his appeal, he filed a notice of withdrawal of his final report. He also superseded the order appealed from by filing a bond in the amount fixed by the trial court, and thus stayed the effect of that order.

Under this state of the record, we cannot hold that appellant voluntarily performed any act or received any benefit under the order appealed from, which is a bar to his prosecuting this appeal. The motion to dismiss the appeal is denied.

The testimony of the subscribing witnesses (the attorney who prepared the instrument and his secretary) appears in the record by deposition. Both responded in the affirmative when asked if Mabel Gordon was of sound and disposing mind and memory at the time she signed the will. Their reasons for that conclusion are, respectively, that "she acted as any normal person would," and "her actions, speech and manner were those of a normal person." Both

deposed that she was then of sound and disposing mind and memory.

The testimony produced at the hearing was in sharp conflict. On the issue of testamentary capacity, appellant presented a number of witnesses. The only medical witness was a Seattle physician, who specializes in internal medicine and diagnosis. He first examined Mrs. Gordon *more than a year and a half after the execution of the will.* Based on his knowledge of her physical and mental condition during the last six months of her life, he expressed the opinion that she was not, *at the time of executing the will,* on April 20, 1954, capable of realizing the extent of her property and the natural objects of her bounty. His opinion was principally based upon the subjective symptoms related by Mrs. Gordon to him. However, he was unable to detect any specific physical infirmity but ascribed her complaints to emotional disturbance, which he characterized as of manic-depressive type. He stated that she had lucid intervals. He considered certain of her actions and remarks "inappropriate."

Appellant also called the pastor of the church which Mrs. Gordon attended, who testified that he had known her for about ten years; during her second marriage he visited her frequently in response to her requests for counsel; after her marriage to appellant, her calls for assistance abated for three or four years; at times her conversation was "erratic"; during the last years of her life he perceived a noticeable increase in tension; she was often in tears and near hysteria; she once told him that she thought she was losing her mind; she was a person who would be easily influenced. He expressed the opinion that she was "emotionally unbalanced," and would not have been competent, on April 20, 1954, "to draw a will on her own."

Other lay witnesses, including appellant, testified to isolated acts of individualism on the part of Mrs. Gordon over the course of several years. Among other things, there was testimony that she purchased articles which she did not need or use; that she was frequently upset and emotional;

that, after late 1955, she was unable to properly handle money; and that she was unable to perform some of her household duties.

Opposed to this testimony is that of certain other disinterested lay witnesses called by respondent, one of whom was a frequent companion of Mrs. Gordon's from 1952 until 1956. This witness testified that she was in the Gordon home many times; that the home was always "immaculate"; that Mrs. Gordon was a cautious buyer, took advantage of sales, and did not purchase extravagantly. The witness had never observed Mrs. Gordon to be emotionally depressed or crying.

Other testimony revealed that Mrs. Gordon was a leader in a small church group; that, as late as December, 1955, she made purchases of food for a needy family on behalf of the group; and that Mrs. Gordon displayed no outward manifestations of emotional disturbance.

The record also discloses that, late in 1954, appellant and Mrs. Gordon jointly discussed making wills with a Seattle attorney, but failed to return to his office to consummate the transaction.

Error is assigned to certain findings of fact, particularly findings No. 4 and No. 5, which, in substance, declared that Mrs. Gordon did, on April 20, 1954, have testamentary capacity and was not unduly influenced by anyone in the execution of her will on that date.

This is another of those infrequent cases in which one spouse, by will, disinherits the survivor. The trial judge very liberally received evidence offered by each of the parties as bearing on the two issues presented, and gave it very careful consideration before rendering his oral decision. In rendering that decision, the court reviewed the course of conduct of the testatrix in relation to her prior wills, and carefully weighed the evidence admitted at the trial. The court concluded that there was no undue influence exercised by anyone at the time Mrs. Gordon executed her last will, and that she was then mentally competent to make a will.

■ The right to dispose of one's property by will is not only a valuable right but one protected by statute. ·*In re Hamilton's Estate,* 26 Wn. (2d) 363, 174 P. (2d) 301 (1946); *In re Martinson's Estate,* 29 Wn. (2d) 912, 190 P. (2d) ·96 (1948).

■ In the last analysis, this case involves only two issues of fact. The trial court, after hearing and seeing the witnesses, made the findings of fact, which appellant has challenged in his assignments of error. After reading the record with care, we cannot say that the evidence preponderates against these findings.

■ As recently stated by this court in *In re Siglea's Estate,* 51 Wn. (2d) 239, 316 P. (2d) 1101 (1957), a will contest involving testamentary capacity,

" 'One who contests a will has the burden of establishing its invalidity by evidence which is clear, cogent, and convincing.' *In re Youngkin's Estate,* 48 Wn. (2d) 432, 434, 294 P. (2d) 426 (1956).

"The trial court weighed the evidence and concluded that the appellant had not met this burden of proof. Our reading of the record convinces us that the evidence does not preponderate against the trial court's findings."

See *In re Mitchell's Estate,* 41 Wn. (2d) 326, 249 P. (2d) 385 (1952).

There is only one other assignment of error which should be mentioned. In his second assignment, appellant complains that the trial court erred in appointing the Seattle-First National Bank as administrator, with the will annexed, of any part of the decedent's property. Subsequent to the entry of the decree from which this appeal is prosecuted, our opinion in *In re Bormans' Estates,* 50 Wn. (2d) 791, 314 P. (2d) 617 (1957), was filed. Respondents, in their brief, initially directed our attention to that case, but argued that it is not controlling. We do not agree. Appellant's second assignment is well taken.

■ On the basis of that decision, we must hold that the trial court had no authority to appoint a national bank as administrator upon respondent's petition, because, as a nonresident of this state, Mr. Preston was not qualified so to

act. The cause is remanded solely to enable the court to appoint an administrator who is not disqualified by RCW 11.36.010.

The order appealed from is, in all other respects, affirmed. Respondent shall recover his costs in this court.

HILL, C. J., ROSELLINI, and HUNTER, JJ., concur.

FOSTER, J., concurs in the result.

July 18, 1958. Petition for rehearing denied.

