[No. 37284. Department Two. November 12, 1964.]

ELLEN J. HOLMES, *Respondent,* v. HARRY HOLMES *et al., Appellants.*\*

\*Reported in 396 P. (2d) 633.

*Garland & Bishop,* by *Marion Garland, Jr.,* for appellants.

*Jones, Grey, Kehoe, Hooper & Olsen,* by *Russell J. Reid,* for respondent.

FOLEY, J.†—This action was brought by Ellen J. Holmes (respondent) for a declaratory judgment interpreting a provision of her late husband's will. The will provided in part:

"All of my estate of every kind and character whatsoever, including both real, personal and mixed property, and wheresoever situated, including both that which I may now own and that which I may hereafter acquire, which I may own at the time of my decease, I hereby give, devise and bequeath to my beloved wife, Ellen J. Holmes, to use for her care and maintenance as she finds necessary.

"Upon the passing of my wife, Ellen J. Holmes, then all the balance and residue of the estate shall be divided equally between . . ." (Hereinafter are named as remainder-men one nephew, two nieces, five grandnephews, one grand-niece, two brothers-in-law.)

Included in the property left under the will to Mrs. Holmes was a house and lot in Seattle valued at approxi-

---

†Judge Foley is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

mately $10,000. Mrs. Holmes is desirous of selling this property and brought this action to determine her rights to convey the property free of any interest of the remaindermen. The decree of distribution in the estate, following the language of the will, "awarded to Ellen J. Holmes, to use for her care and maintenance as she finds necessary . . . Lot 32, Block 143, Gilman's Addition to the City of Seattle, also known as 2541 - 11th Avenue West, Seattle, Washington."

The defendants (appellants) in this action are the remaindermen named in the will. In their answer, they allege that the proposed sale is not for the purpose of providing for Mrs. Holmes's care and maintenance. They allege that Mrs. Holmes inherited $50,000 and that this property is sufficient for her to live upon without the sale of the real property. They allege that Mrs. Holmes has not accounted to them for the balance or remainder of the estate that she received from her husband and that this estate has been used for purposes other than her care and maintenance.

Defendants' (appellants') contention in the superior court and on appeal is that the will gives Mrs. Holmes the right to "use" the property, not to sell it; that, in any event, the will does not confer the right to sell the real property except upon a showing that she finds it necessary, and this can only be shown by a finding that she has, in good faith, used her private estate and the balance of her inherited estate for her maintenance, and that she has not pauperized herself for the purpose of defeating the remaindermen.

The trial court was of the opinion that the will gave Mrs. Holmes the power to sell the property without a showing that the sale was needed for her care and maintenance. A summary judgment was granted and defendants appeal.

Two issues are raised on appeal: (1) whether or not, under the terms of the will, Mrs. Holmes had a right to sell the property; (2) whether or not the court should have required Mrs. Holmes to make a showing of necessity before allowing her to sell the house clear of any re-

maindermen's interest. In a case of this type, the court must determine the intent of the testator. The court cannot rewrite the will; the intent of the testator, as manifested by the language of the will, must be given effect if it is lawful. RCW 11.12.230. *In re Johnson's Estate,* 46 Wn. (2d) 308, 280 P. (2d) 1034; *In re Preston's Estate,* 59 Wn. (2d) 11, 365 P. (2d) 595.

Appellants contend that the testator, in employing the word "use," created a life estate in the respondent but did not give the right to invade the corpus of the estate, citing the following cases: *Rowe v. Rowe,* 95 N. H. 241, 61 A. (2d) 526; *McAllister v. Long,* 206 Okla. 623, 246 P. (2d) 352; *Elwell v. Stewart,* 110 Kan. 218, 203 Pac. 922; *Dillen v. Fancher,* 193 Ark. 715, 102 S. W. (2d) 87. We find these cases from other jurisdictions are not persuasive, as the language of the wills and circumstances are different from the case at bar.

■ It is our conclusion that the testator, in giving his property to his wife "to use for her care and maintenance as she finds necessary" intended that she could use and consume any or all of the property and that, by doing so, it gave her the right to dispose of the property free of any remaindermen's interest.

In *Kennedy v. Pittsburg & Lake Erie R. Co.,* 216 Pa. 575, 65 Atl. 1102, the court said:

"The power to use the principal means the power to consume, and the power to consume real estate necessarily includes the power to convey."

In 91 C.J.S., p. 518, it is stated:

" . . . in a more comprehensive sense, the word 'use' may imply employment to the extent of a complete appropriation, expenditure, or consumption of the thing employed, meaning a permanent use, and in this sense the word 'use' is defined as meaning to consume, use up, exhaust . . ."

The following cases from other jurisdictions support this interpretation: *Atlantic Nat. Bank of Jacksonville, Fla. v. St. Louis Union Trust Co.,* 357 Mo. 770, 211 S. W. (2d) 2; *Dennis v. Trustees of Choateville Christian Church,* 290

S. W. (2d) 601 (Ky. 1956); *In re Cobeen's Estate,* 270 Wis. 545, 72 N. W. (2d) 324; *Zanich v. Okum,* 109 Pa. Super. Ct. 200, 167 Atl. 463; *Woodlief v. Clay,* 71 S. W. (2d) 600 (Tex. 1934); *Williams v. Coldwell,* 111 S. W. (2d) 367 (Tenn. 1937). See 33 Am. Jur., Life Estates § 19, p. 482.

Appellants contend that the words "for her care and maintenance" limit any expenditure to a finding of necessity. However, the testator continued and stated that she may use the property "as she finds necessary." We must give effect to every part of the will unless the clauses are inconsistent and cannot be reconciled. *In re MacAdams' Estate,* 45 Wn. (2d) 527, 276 P. (2d) 729; *In re Thomas' Estate,* 17 Wn. (2d) 674, 136 P. (2d) 1017, 147 A.L.R. 598.

Mrs. Holmes is given the use of the property for her care and maintenance and the determination of necessity is to be made by her alone. The testator did not appoint an independent trustee, nor did he impose the burden upon her of showing necessity before any tribunal. The words "as she finds necessary" indicate a subjective determination to be made by her. If she feels that it is necessary to convert real property to personal property, then she is free to make this determination. This interpretation is consistent with the general intent of the testator and the surrounding circumstances. No children are involved in this dispute. The remaindermen are collateral remaindermen—nephews, nieces, grandnephews and grandnieces and brothers-in-law. The testator would naturally intend that his wife have a free hand in managing and controlling the estate, free from the control of collateral relatives.

We are not concerned in this case with what is done with the proceeds of the sale, but only with her right to sell in the first instance, because the corpus of the estate will still remain intact, after the sale, in the form of personal property.

The testator also refrained from using the technical word "remainder" which would indicate a future estate in the corpus. He provided "Upon the passing of my wife, Ellen J. Holmes, then all the balance and residue of the estate shall be divided equally . . . ."

■ The word "balance" is of no technical significance. In general, it means something that is left over. Webster's Third New International Dictionary.

In *In re Doerfler's Will,* 225 Wis. 418, 273 N. W. 460, the estate was devised to testator's wife for life for her use and enjoyment and then provided ". . . After the death of my wife the balance is to be divided as follows:" The Wisconsin court held that by the use of the word "balance" the testator gave his wife power to expend, use and consume the part of the principal which she deemed necessary for her support. The court said, p. 423:

". . . If the testator had used the word 'remainder' in the place where he used 'balance,' there would be an ambiguity; the question then arising whether it was used in the sense of 'what is left' or in the sense of a future estate in the corpus. The testator did use, however, the word 'balance,' a word of no technical significance, but meaning in general 'what is left,' . . ."

See, also, *Bunnell v. Beam,* 86 N. J. Eq. 101, 97 Atl. 494.

In *Porter v. Wheeler,* 131 Wash. 482, 484, 230 Pac. 640, the court construed the following language of decedent's will:

"'. . . I give, devise and bequeath to my wife Mary Wheeler Porter all the balance of my property, real, personal and mixed of which I may die seized . . . to be used and enjoyed by her during her lifetime; and at her death, I will that all of said property not used for her support and comfort, go to my said son Alvah Porter.'"

■ The question in the *Porter* case was whether, after the death of the life tenant, her personal representative could claim the property. The court held that the life tenant could not dispose of the property by will or other disposition to take effect upon death. The case supports respondent's contention that she could have conveyed fee simple title to the property in which she had a life estate during her lifetime. The court so indicates, p. 487:

". . . We are of the opinion, therefore, that the plaintiff is entitled to be decreed to be the owner of all the property of which Mary Wheeler Porter took such lifetime

use of and interest in under the will of Nathan S. Porter, in so far as that property has not been consumed in and is not now burdened with obligations growing out of its use for her support and comfort during her lifetime."

The court further said in the *Porter* case, p. 486:

"We shall not attempt to give to this estate so vested in Mary Wheeler Porter any technical name. It seems to be something more than an ordinary conventional life estate (since the language of the will does not limit her right to the bare use of the property in the sense of limiting her right to the income therefrom with a view of preserving the property during her lifetime), but manifestly gives her the right to support and comfort from the property even though it be consumed in furnishing her support and comfort during her lifetime. . . ."

As stated in the *Porter* case, the wife does not have an entirely free hand to deal with the property. Just as we cannot ignore the full power given to Mrs. Holmes, we cannot ignore the limitation placed upon her estate. She is not given a fee interest. She does not have testamentary power over the balance of the estate. As appellants contend, she cannot "pauperize herself for the purpose of defeating the remaindermen."

Appellants' answer did not allege that Mrs. Holmes was depleting the estate with the intent of defeating the interest of the remaindermen. There is no allegation that she was giving away the property or that she was depleting the corpus of the estate by selling the property at a grossly inadequate price or was acting in bad faith.

The case of *Owen v. Dumas,* 200 Ark. 601, 140 S. W. (2d) 101, relied upon by appellants, is distinguishable. The court held that the will authorizing the wife to dispose of property when necessary for her support and maintenance, for the benefit of the estate, or for the education of her minor children, did not give her authority to give the property away.

We find nothing in the will which requires Mrs. Holmes to account to the remaindermen, as alleged in appellants' answer. She is given full discretion to deal with the estate

as she finds necessary, subject to the enumerated exceptions. None of these exceptions was alleged by appellants. The issue before the trial court was whether or not, under the terms of the will, Mrs. Holmes had a right to sell the property clear of any remaindermen's interest without showing that it was necessary to do so for her care and maintenance. By using the words "as she finds necessary," the testator gave her the sole power to make that determination. Therefore, no evidence was required to be taken in superior court.

Likewise, the allegation in the amended answer that the respondent had inherited over $50,000 worth of property and that the property is sufficient for her to live upon without the sale of the real property that she now wishes to sell does not raise an issue of fact which would require evidence to be taken. Under the terms of the will, the testator intended that his wife had a right to use this property for her care and maintenance "as she finds necessary." It is immaterial, therefore, whether or not she has independent means from which to provide for her care and maintenance.

In *In re Smith's Will,* 170 Misc. 556, 11 N. Y. S. (2d) 945, the court said, p. 948:

"The court is impressed that the intention of the testator was to make a gift of support and maintenance, and if the conclusion of the Court is correct, then it follows that the beneficiary is not required to exhaust her own means before consuming the principal."

The disposition made by the superior court was correct. The judgment is affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.