[No. 38429.    En Banc.    May 8, 1969.]

*In the Matter of the Estate of* ANNA H. PRICE *et al., Deceased.*

HOWARD S. PRICE, JR., *et al., as Guardian, Appellants,* v. FREDERICK M. PRICE, *as Executor, Respondent.**

*Reported in 454 P.2d 411.

*W. L. Minnick* (of *Minnick, Hahner & Hubbard*), and *R. Michael Kight*, for appellants.

*Betty Taylor Howard*, for respondent.

ROSELLINI, J.—The court is asked to construe the dispositive provisions of a will.

W. Montelius Price and his wife, Anna Howard, executed mutual wills in April 1957. At that time they had four surviving children, a fifth child having died about 25 years previously. Their son, Howard S. Price, died April 24, 1961, leaving surviving him five children. Anna Howard Price died February 6, 1962, and W. Montelius Price died January 26, 1964. No new wills or codicils were made by the senior Prices after the death of Howard.

The respondent is the executor of the estate of W. Montelius Price, representing himself and the other surviving children. The appellants are the children of Howard, and it is their contention that they are entitled to inherit their deceased father's share of the estate.

The significant portions of the will are as follows:

### SECOND

I hereby declare that I have four surviving children, Elizabeth Price Morgan, Howard M. Price, Henry S. Price, and Frederick M. Price, and no other child or children of any deceased child.

### FOURTH

In the event that my said wife should predecease me, then I give, devise and bequeath my entire estate, consisting of all my property, real, personal or mixed, wheresoever situated, to my four children equally, taking into consideration all advancements made heretofore or hereafter to any of them, to be distributed as follows:

1. To my son Frederick, usually known as Jerry, the sum of $10,000, free of any tax which may be payable on that amount, and also the right to purchase my business, denominated the W. Montelius Price Co., a sole proprietorship, as hereinafter provided.

2. To my son Henry, a like sum of $10,000, free of any tax which may be payable on that amount.

3. All the rest and residue of my said estate to my then surviving children, equally, to be distributed to them as hereinafter set forth, after expenses of administration and taxes.

### FIFTH

I direct my executrix, or executor, to employ my son Frederick to manage and wind up the affairs of my business . . . and prior to the distribution of my estate to offer the said business to my said son Frederick at the appraised value therof, the terms of the sale to be determined by the mutual agreement of my surviving children.

In the further event, however, that my son Frederick . . . should not survive me, then the said business shall be offered to my son Henry S. Price . . .

The trial court found that the will was unambiguous and that it was the testator's intention to leave his estate to his surviving children. The appellants contend that it was his intention to leave it to his surviving children and to the children of any deceased child, by right of representation.

In approaching the question thus broached, we bear in mind that the right to dispose of one's property by will is a valuable right and is protected by statute. *In re Meagher's Estate*, 60 Wn.2d 691, 375 P.2d 148 (1962); *In re Gordon's Estate*, 52 Wn.2d 470, 326 P.2d 340 (1958). The court, in construing a will, is faced with the situation as it existed when the will was drawn, and must consider all the surrounding circumstances, the objects sought to be obtained, and endeavor to determine what was in the testator's mind when he made the bequests, and the court must not make a new will for him, or warp his language in order to obtain a result which the court might feel to be just. *In re Quick's Estate*, 33 Wn.2d 568, 206 P.2d 489 (1949). *Accord: Holmes v. Holmes*, 65 Wn.2d 230, 396 P.2d 633 (1964). Words used in a will are understood in their ordinary sense if there is nothing to indicate a contrary intent. *In re Levas' Estate*, 33 Wn.2d 530, 206 P.2d 482 (1949).

The ambiguity which the appellants claim exists in the will and which they say should be resolved by finding that the testator intended his property to descend by the laws of intestacy if his wife predeceased him is found in the alleged inconsistency between the following two provisions in the fourth paragraph:

I give . . . all my property . . . to my four children equally, . . . to be distributed as follows:

. . .

3. All the rest and residue of my said estate to my then surviving children, equally, to be distributed to them as hereinafter set forth, after expenses of administration and taxes.

According to the appellants' reading of these two provisions, it was the testator's intent, as expressed in the first quoted provision, to give his estate to all four of his children, whether or not they survived him. In adopting this interpretation, they run immediately into the difficulty presented by the fact that the testator provided that the actual distribution should be made to his *then* surviving children. They attempt to explain away this inconsistency by pointing to the second paragraph, in which the testator said that he had four surviving children. In this paragraph, they say, he defined what he meant by "surviving"—namely, his four children.

Granting to this argument whatever logical merit it might have, it nevertheless overlooks the fact that in the fourth paragraph the testator does not speak merely of "surviving children" but rather of his "then surviving children." In short, the appellants would ignore the very significant word "then" and read it out of the will.

Viewing this situation as it existed at the time the will was executed, and examining the will from its four corners, there is no reason to suppose that the testator did not know the meaning of the word "surviving." He was aware that one of his five children had died, and that there were at that time only four surviving. He used the word several times in the will, and each time he used it in harmony with the context. He provided that one of his sons should be

given the option of purchasing the business if he survived him, and that if he did not do so, another son might have the option. He also provided that the terms of the sale should be determined by his surviving children. This provision obviously can mean only those children surviving at the time of the sale, since a deceased child could hardly participate. His primary beneficiary was his wife, if she survived him. There is simply no reason to suppose that the testator, when he used the words "then surviving" meant "now surviving."

Although the testator had grandchildren living at the time he executed the will, he made no reference whatsoever to them in the will. Nowhere can there be found any expression of intent to benefit them. For whatever reasons he may have had, the testator expressed only an intent to benefit his children. This will was drawn by an attorney, who presumably advised the testator of the law of intestacy. If the testator had wanted to provide for grandchildren, it would have been easy to do so in the customary way, providing that the children of any deceased child should take his share, per stirpes, or any language to that effect. It would be strange indeed if a testator, wishing to provide for his grandchildren in the event of the death of his child prior to his own death, should feel that the end could best be accomplished by omitting to mention such grandchildren in his will and relying upon a court to find his will ambiguous and contrive a way to let those grandchildren take by virtue of a statute.

Similarly, if the testator had desired to benefit the estate of any deceased child, he need only have provided that the residue of his estate should be divided equally among his four children, omitting the words "then surviving."

It is therefore plain that, in the dispositive portion of his will, the testator designated as his beneficiaries (after providing specific bequests to his two younger sons to compensate them for advancements made to the other children) his children who should survive him. It is true that in the preceding paragraph the testator mentioned his

*four children* as his intended beneficiaries. Of course, it was his intention to provide for all four of his children, but there is no expressed intent to provide for any grandchildren. The word "children," as used in a will, in its ordinarily accepted meaning, does not include grandchildren. *In re Hutton's Estate*, 106 Wash. 578, 180 Pac. 882, 3 A.L.R. 1673 (1919). 4 Page on Wills, § 34.19, at 438 (rev. 1961). Where the will unambiguously designates "children" as devisees or legatees, extrinsic evidence is generally not admissible to show the testator's intention to designate or include grandchildren. 57 Am. Jur. *Wills* § 1071, at 692 (1948). *See* 94 A.L.R. 108 (1935).

If the words of this will are given their ordinary meaning, it is unambiguous. The second article of the will does not purport to dispose of the testator's property or to name his beneficiaries. *See* 7 Page on Wills, § 62.18, at 118 (rev. 1963). It simply describes the status of his family and it describes it correctly. He had, at the time he made the will, four surviving children.

■ Surviving means remaining alive. See any dictionary. *See also* 4 Page on Wills, § 34.32, at 467 (rev. 1961).

The alleged ambiguity can be resolved if the first paragraph is regarded as defining the class who can take under the will (my four children) and the succeeding paragraphs state the conditions under which they will take and the manner of distribution. The $10,000 specific bequests to the two sons are evidently intended to offset advancements previously made or to be made in the future to other children. The only condition placed upon the right of each child to receive his share of the residue is that the child should survive him. Otherwise, the deceased child's share is to be divided among the surviving children.

■ The rule is that provisions in a will should be reconciled if possible. This interpretation of the will does in fact reconcile the provisions. It also accords with the rule that that construction should be adopted which makes the instrument clear and understandable in preference to a

construction which renders the instrument strained and unnatural. *In re Torando's Estate,* 38 Wn.2d 642, 228 P.2d 142, 236 P.2d 552 (1951).

The judgment is affirmed.

HILL, WEAVER, HAMILTON, HALE, and McGOVERN, JJ., concur.

FINLEY, J. (dissenting)—This appeal poses the problem of the proper construction of the will of W. Montelius Price. The trial court found the will to be unambiguous and construed it to exclude appellants from taking under it.

W. Montelius Price and his wife, Anna, executed mutual wills in April of 1957. Anna died on February 6, 1962, and W. Montelius Price died on January 26, 1964. Five children had been born of the Price's marriage. The eldest son died childless in 1933. The other four children are named in the second article of W. Montelius Price's will, which reads as follows:

> I hereby declare that I have four surviving children, Elizabeth Price Morgan, Howard M. [S.] Price, Henry S. Price, and Frederick M. Price, and no other child or children of any deceased child.

Howard Price was killed in an accident on April 24, 1961. The appellants and nominal parties are Howard's eldest child and his widow. Howard's widow is acting as guardian ad litem for the four youngest of their five children. Reference to the appellants herein shall mean the five children of Howard Price who are the real parties in interest. The respondent is the executor, Frederick, representing himself, Elizabeth, and Henry.

The fourth article of W. Montelius Price's will reads as follows:

> In the event that my said wife should predecease me, then I give, devise and bequeath my entire estate, consisting of all my property, real, personal or mixed, wheresoever situated, to my four children equally, taking into consideration all advancements made heretofore or hereafter to any of them, to be distributed as follows:

[Subsections 1 and 2 make specific bequests to the two bachelor sons, Frederick and Henry, of $10,000 each, and give Frederick an option to purchase the testator's business.]

. . .

3. All of the rest and residue of my said estate to my then surviving children, equally, to be distributed to them as hereinafter set forth, after expenses of administration and taxes.

It should be noted that, in the fourth article of his will, Montelius first left his entire estate *"to my four children equally,"* and then, in describing how the estate was to be distributed, left the residue, after two specific bequests, *"to my then surviving children, equally . . ."* If the second direction is followed literally, appellants take nothing since Howard was not a "then surviving" child at the time Montelius died. If the first direction, *i.e.,* "to my four children equally," is followed literally, then appellants take under the provisions of RCW 11.12.110, since that statute provides that the descendants of a testator's deceased child shall take their deceased parent's share. Since the will clearly admits of two interpretations, it may properly be termed ambiguous. *In re Estate of Torando,* 38 Wn.2d 642, 228 P.2d 142 (1951).

The will being ambiguous on the question of the disposition of the residue, it becomes necessary to resolve the ambiguity by attempting to determine the intent of the testator. If the testator's intent, scheme, or plan can be determined within the four corners of the will, the court is not at liberty to go beyond the instrument. *In re Estate of Shaw,* 69 Wn.2d 238, 417 P.2d 942 (1966); *In re Estate of Johnson,* 46 Wn.2d 308, 280 P.2d 1034 (1955).

Generally speaking, this court has said many times that a provision of a will should be construed in light of the entire instrument. Stated a bit differently, it is said that courts should endeavor to give effect to every part of the will, and should make a reasonable effort to reconcile two seemingly

inconsistent provisions. *In re Estate of Thomas*, 17 Wn.2d 674, 136 P.2d 1017, 147 A.L.R. 598 (1943); *In re Estate of MacAdams*, 45 Wn.2d 527, 276 P.2d 729 (1954).

In the case of *In re Estate of Levas*, 33 Wn.2d 530, 535-36, 206 P.2d 482 (1949), this court made the following statement:

> Several of the important applicable rules of construction are: (a) each part of the will is construed in connection with the other parts, and effect is given to all if possible; (b) a will is presumed to speak as of the time of the testator's death; (c) the testator's intention is to be determined as of the time of execution of the will; (d) words used in a will are understood in their ordinary sense if there is nothing to indicate a contrary intent; (e) where there is room for construction, that meaning will be adopted which favors those who would inherit under the intestate laws; (f) wills should be construed to uphold rather than defeat devises and bequests.

(Citing many cases.) I think two of the quoted rules of construction are particularly pertinent here.

In the first place, it is definitely relevant that the testator's intention is to be determined *as of the time of execution of the will*. At that time, as noted above, the second article of the will lists and specifically names *four children*, as follows:

> I hereby declare that I have four surviving children, Elizabeth Price Morgan, Howard M. [S.] Price, Henry S. Price, and Frederick M. Price, and no other child or children of any deceased child.

It seems reasonable to conclude that by this enumeration, listing and specifically naming *four children*, Montelius intended to provide a meaningful definition of the phrase "surviving children," which definition then becomes operative, although somewhat inexactly, in conjunction with the phrase "my then surviving children."

In the second place, this interpretation is supported by application of the other pertinent rule of construction quoted in *In re Estate of Levas*, *viz.*, that where there is room for construction, *that meaning will be adopted which favors those who would inherit under the intestate laws*.

This state's laws relative to the distribution of real and personal property upon death intestate provide that the issue of an intestate's deceased child take by right of representation. *See* RCW 11.04.020(5) *and* RCW 11.04.030(3). Thus, by adopting the construction of the will which gives the residue of the estate to "my four surviving children," Howard would be included, and now, by virtue of RCW 11.12.110, appellants. I would strongly favor adopting an interpretation of the will which is harmonious with the laws of inheritance. *See In re Estate of Tipp,* 54 Wn.2d 585, 343 P.2d 566 (1959); *In re Estate of Lambell,* 200 Wash. 220, 93 P.2d 352 (1939). I note and emphasize further that there is nothing in the text of the will other than the single use of the word "then" which indicates an intent to make the question of whether or not appellants are to participate in their grandfather's estate turn on whether their father survived their grandfather. I would thus conclude that the testator intended appellants to take under the present circumstances, and therefore that such a construction of the will should be adopted.

I think the judgment of the trial court should be reversed, and the case remanded for proceedings consistent with the views expressed herein; consequently, I cannot agree with and must dissent regarding the majority's disposition.

HUNTER, C. J., and NEILL, J., concur with FINLEY, J.