### NEWTON v. OLD-MERCHANTS NATIONAL BANK & TRUST CO.

1. TRUSTS—SELF-DEALING BY TRUSTEE—LIABILITY FOR LOSSES.
    Under provision of trust instrument plainly permitting self-dealing by the trustee, trustee was not liable for losses sustained on the investments made by it subsequent to the execution of the instrument where there is no showing that the trustee was guilty of any fraud, deceit, overreaching or any misconduct of any character.

---

In general, as to a trustee's duty in making investments, see 1 Restatement, Trusts, § 227.

Exculpatory provisions and provisions limiting a trustee's duties, see 1 Restatement, Trusts, § 222, comment (c).

Duty of a trustee with respect to self-dealing, see 1 Restatement, Trusts, § 170.

Trustee's duty to diversify investments, see 1 Restatement, Trusts, § 228.

Discharge of a trustee's liability to a beneficiary by subsequent affirmance, see 1 Restatement, Trusts, § 218.

2. SAME—BREACH OF TRUST—CONSENT—CLEAN-HANDS DOCTRINE.

If a beneficiary, of full age and sound mind, acting with full knowledge of the facts and his rights, and not under the influence of misrepresentation, concealment, or other wrongful conduct on the part of the trustee or another, consents that the trustee or a third person may perform an act or refrain from performing an act, equity will not permit the beneficiary to allege thereafter that the conduct of the trustee or third person to which consent was given was a breach of the trust, or amounted to participation in a breach, since to do so would violate the clean-hands doctrine.

3. SAME—LIMITATION OF LIABILITY OF TRUSTEE.

The liability imposed on and accepted by a trustee may be limited by the terms of the trust instrument and if so limited the measure of his liability is to be sought in such clause properly construed.

4. SAME—SELF-DEALING BY TRUSTEE—SALE TO TRUST ESTATE OF SECURITIES—CURRENT MARKET PRICE—PROFITS.

Under provision of trust instrument permitting self-dealing by the trustee in the matter of purchasing securities from itself at the "then current market price," and relieving trustee from liability for losses thereafter sustained not occasioned by gross negligence or bad faith of the trustee, trustee would not be liable for losses sustained by the trust where undisputed testimony is that the trustee complied with the limitation, as it was not incumbent upon the trustee to inform the beneficiary of whether or not the trustee experienced a profit or a loss incident to such transaction.

5. SAME—CREATION.

The mere fact that the settlor contemplates the subsequent execution of a formal trust instrument does not necessarily negative the present creation of a trust, if its terms are sufficiently indicated.

6. SAME—INVESTMENT TRUST—ACCOUNTING FOR LOSSES—EXECUTION OF INSTRUMENTS.

In suit by beneficiary of a trust for investment purposes for an accounting for losses sustained where final consummation of written instrument of trust was but one incident of transaction which should be viewed as a whole, and settlor fully authorized action of bank in investing trust funds in advance of execution of the written instrument, and trustee was not guilty of any fraud, bad faith or overreaching, trustee would not

be liable for losses on investments of securities purchased from itself with settlor's funds prior to execution of trust instrument at then current market price notwithstanding fact of purchase from itself was not disclosed to settlor, especially where settlor was advised as to what the initial and subsequent investments were and parties contemplated that self-dealing by trustee would be permitted under instrument then being negotiated.

7. SAME—PERSONAL PROPERTY—PAROL TRUST.

An investment trust involving only personal property may be consummated and made binding upon the parties even though resting wholly in parol.

8. SAME—SELF-DEALING BY TRUSTEE CLOSELY SCRUTINIZED.

Transactions involving self-dealing by a trustee will be closely scrutinized.

9. SAME—ACCOUNTING BY TRUSTEE—CAUSAL RELATION BETWEEN LOSS AND FAILURE TO DISCLOSE SELF-DEALING OR PROFITS.

Trustee under investment trust may not be required to account for losses sustained by trust where there is no causal relation between such loss and the trustee's failure to advise settlor of its self-dealings or of its having experienced a profit by selling securities to the trust at the then current market price.

10. SAME—LACK OF DIVERSITY IN MAKING INVESTMENT—ESTOPPEL.

No recovery may be had from trustee under investment trust for losses sustained by the trust because of alleged lack of diversity in investment of trust funds where trustee had sold to trust bonds of the same kind and description held by trustee and sold by it to its other customers and had given settlor a list of the bonds giving the amount of each bond and a detailed description thereof and had made semi-annual accounts showing receipts, disbursements, inventory and yield therefrom during life of trust and settlor, though having ample opportunity, failed to make complaint, thereby ratifying trustee's action and estopping the raising of any question as to diversity of investments after trust was revoked by mutual consent of all parties concerned and trustee, then in process of being liquidated, had been discharged.

11. APPEAL AND ERROR—CHANGED THEORY OF DEFENSE ON TRIAL AND APPEAL—RECORD.

A decree will not be reversed merely because upon the trial defense was upon one theory and a different and somewhat inconsistent position was taken upon appeal where defense

urged in appellate court is within record as made and plaintiff's right to a fair hearing has not been impaired.

12. TRUSTS—LIABILITY OF TRUSTEE FOR NEGLIGENCE OR BREACH OF TRUST GOVERNED BY CIRCUMSTANCES.

In determining whether trustee was guilty of negligence or violation of its trust duty, a court is governed by the circumstances of the particular case.

13. SAME—GOOD FAITH.

The court will always favor trustee who has acted without bad faith and not wilfully.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted October 9, 1941. (Docket No. 30, Calendar No. 41,716.) Decided December 2, 1941. Rehearing denied February 11, 1942.

Bill by Frances W. Newton against Old-Merchants National Bank & Trust Company of Battle Creek and others to cancel a trust agreement and release, and for accounting of losses sustained incident to the trust. Decree granting partial relief to plaintiff. Defendants appeal. Plaintiff cross-appeals. Reversed and bill dismissed.

*Donald R. Gordon,* for plaintiff.

*Burritt Hamilton* and *James Cleary,* for defendants.

NORTH, J. Plaintiff is the daughter of Cora S. Way, deceased. She is also the possessor of the residuary or remainderman rights in the Cora Way trust involved in this suit. By this action plaintiff seeks cancellation of a trust agreement entered into between Mrs. Way and the Old-Merchants National Bank & Trust Company of Battle Creek and cancellation of a release given to the trustee, and an accounting for losses sustained incident to the trust.

The grounds upon which plaintiff asserts right to the relief sought are that (1) the trustee failed to diversify investments of the trust fund, (2) the trustee failed to exercise due care in making the investments, (3) the trustee purchased securities for the trust from its own bond department without so informing the settlor, and (4) the trustee failed to inform the settlor that it made a profit by the sale of its own securities to the trust. After hearing the case in open court the circuit judge denied relief to plaintiff except in the following particular. As to the investments of trust funds by the trustee in securities held by the bond department of the trustee bank, which investments were made prior to the execution of the trust instrument, the trustee was required to account to plaintiff for losses sustained by the trust. From the decree entered the defendants appealed and plaintiff perfected a cross-appeal.

In the latter part of 1929, Mrs. Cora S. Way was residing in Honolulu, Territory of Hawaii, with her daughter, Frances W. Newton. At the time Mrs. Way had left in the custody of the Old-Merchants National Bank & Trust Company of Battle Creek, Michigan, 849 shares of Cities Service stock. She communicated to the bank by letter dated September 25, 1929, her desire to sell all except 100 shares of this stock and after paying a small indebtedness to the bank to have the balance of the money received "put into a trust fund with the Old-Merchants National Bank. This fund is to be established jointly in the names of Cora S. Way and Frances Way Newton." In accordance with directions received the bank sold the Cities Service stock and after paying Mrs. Way's indebtedness to the bank the balance of $40,652.87 was held by the bank in Mrs. Way's general deposit account. Thereafter by

letter from Honolulu dated October 29, 1929, Mrs. Way gave the bank the following directions:

"You may now follow out what I wrote you in regard to establishing a trust jointly to myself and Frances Way Newton."

On November 4, 1929, the bank's trust officer mailed to Mrs. Way duplicate copies of a proposed trust agreement and requested Mrs. Way to indicate such changes as she might wish and return to him one of the copies with appropriate notations. In a letter of November 15, 1929, Mrs. Way complied with this request and the only material suggested change embodied in the trust instrument as finally executed is indicated by the following portion of her letter:

"I would like to specify that investments on this trust be made on contracts, bonds or mortgages, never on stocks without my consent."

As just indicated, the suggested provision was embodied in the revised trust instrument which was prepared by the bank's trust officer and mailed for execution in duplicate to Mrs. Way November 27, 1929. Mrs. Way signed the revised trust agreement December 11, 1929, returned the same to the bank, and acceptance of the trust was signed by the bank through its trust officers December 24, 1929. Instead of creating a "joint" trust, Mrs. Way, the settlor, was designated in the trust instrument as the sole beneficiary for life and her daughter, Frances W. Newton, as remainderman. This provision was explained to and approved by Mrs. Way.

Evidently relying upon the contents of the preliminary communications and assuming it had authority so to do notwithstanding the final written trust instrument had not been executed, the bank on

November 26, 1929, changed Mrs. Way's general deposit account to a trust deposit set up in the bank's trust department; and on November 29, 1929, out of this trust fund the bank invested $40,345.03 in bonds, all of which were purchased from the bank's own bond department. But the trial judge found and the record discloses that these bank securities wére placed in the trust at their then fair market price. The bank by letter dated November 30th advised Mrs. Way of the details of this first investment in bonds, including a description of each bond and the price paid. The bank did not inform her of the purchases from the bank's own holdings. On December 26, 1929, Mrs. Way wrote the bank's trust officer: "I also received list of investments, which as far as I know are all right. I feel I have no cause for worry as I am sure you will do everything all right." The bank made subsequent investment in bonds for the trust; and throughout the life of the trust the trustee made semi-annual accounts to the settlor showing receipts and disbursements of the trust estate and gave complete inventory and description of the securities held in the trust. Some of these subsequent investments were in bonds purchased from the trust department of the bank. All such purchases were at the then fair market value of the securities, but the bank at no time notified Mrs. Way that its own securities had been sold to the trust nor did the trustee inform Mrs. Way that the bank as a result of the sale of its securities to the trust had realized a profit of $773.50. Of this amount $672.50 was the profit on bonds placed in the trust before Mrs. Way signed the trust instrument.

The Old-Merchants National Bank & Trust Company went into voluntary liquidation on June 11, 1934. Later it requested the closing of this trust by the settlor. On October 4, 1935, Mrs. Way and her

daughter Frances W. Newton, plaintiff herein, executed a revocation of the trust created in 1929. And, with the exception of certain securities reserved by the settlor, the corpus of the trust was transferred and conveyed to the Security National Bank of Battle Creek as trustee to be administered under a newly-created trust. The revocation instrument provided that upon the transfer of the trust assets to the new trustee and the obtaining of a receipt therefor the Old-Merchants National Bank & Trust Company, as trustee in the original trust, was fully and completely discharged "from all liabilities and further duties under the trust hereby revoked." Thereafter neither the defendant Old-Merchants National Bank & Trust Company nor its liquidating trustees were in any way connected with the operation or management of the Cora Way trust.

During the period that the defendant Old-Merchants National Bank & Trust Company was administering this trust estate certain of the securities were either paid in full or sold without loss. But there is evidence that beginning about the middle of 1931 the remainder of the securities decreased in value. While there is some conflict in the testimony as to the state of the bond market when the first of the securities were purchased for this trust, the trial court found from the testimony, and we think correctly so, that the bond market at the time was "on the rise." Mrs. Way died on February 25, 1939. The bill of complaint was filed July 9, 1940, and the suit is being prosecuted by Frances W. Newton as the administratrix of the estate of Cora S. Way, deceased.

As hereinbefore noted, the circuit judge held the trustee and its liquidating agents should account to or be surcharged with loss sustained by the trust

incident to investments made by the trustee in bonds belonging to the bank in so far as such investments were made prior to the execution of the trust instrument by Mrs. Way; but that neither trustee nor its liquidating agents should be held to account for losses incident to investments made after the execution of the trust instrument by Mrs. Way.

As bearing upon the right of the trustee to purchase securities held by it for this trust, it should be noted that in both the original draft of the trust instrument and in the subsequent draft executed by Mrs. Way and the trustee it was provided:

"The trustor hereby expressly agrees, consents and directs that said trustee may' purchase any or all securities, for any trust fund herein created, either from Old-Merchants National Bank & Trust Company of Battle Creek, its successor or successors, or from others, and that all securities so purchased for such purpose shall be put in and charged to said trust fund at the then current market price at which like securities of the same issue are sold or offered to the general public, or if there be no current market price, then at the price at which securities of the same issue shall have been then most recently sold by said bank to other patrons of its bond department, and as to securities purchased by said bank on its own account and thereafter from its own files to such trust fund, neither said bank nor said trustee shall sustain any other or different relation or liability than would have been sustained by them respectively if such securities had been purchased for such trust fund by the trustee in the open market.

"The said trustee shall not be liable for any loss of corpus, income, issues or profits of said trust fund * * * under any circumstances where such loss is not occasioned by the gross negligence or bad faith of said trustee, its officers or agents."

The trial judge held in effect that the above-quoted provisions in the trust instrument barred plaintiff's right to recover as against the trustee or its liquidating agents for losses incident to securities which the trustee, after the execution of the trust instrument, purchased from the bank for this trust estate. Plaintiff has appealed from the portions of the decree so providing. But the trial judge held that neither the above-quoted provisions of the trust instrument nor the subsequent revocation of the trust and release of the trustee hereinbefore noted barred plaintiff's right to recover for losses incident to securities purchased by the trustee from the bank prior to the execution of the trust instrument. In reaching this conclusion the trial judge seemingly based decision on his holding that since Mrs. Way did not sign the trust agreement until December 11, 1929, the trustee could not have the protection afforded by the trust provision permitting self-dealing as to the initial investments made November 29, 1929. From the portion of the decree so providing the defendants have appealed.

The circuit judge was clearly correct in holding that plaintiff had not established a right to recover for losses sustained by the trust incident to investments made after the trust agreement was executed. At the inception of this trust Mrs. Way was residing with the plaintiff who the record discloses was a woman of business ability and experience. Mrs. Way was possessed of all her faculties and clearly understood transactions of the character here involved. The provision permitting self-dealing by the trustee was plainly and fairly set forth in the trust instrument. There is no showing that the trustee in its dealings under this provision of the trust instrument was guilty of any fraud, deceit,

overreaching or any misconduct of any character. Under the circumstances the permissive self-dealing clause contained in the trust instrument is binding and conclusive of the right of the plaintiff to recover for losses sustained on the investments made subsequent to the execution of the trust instrument.

"If a beneficiary, of full age and sound mind, acting with the full knowledge of the facts of the case and of his rights, and not under the influence of misrepresentation, concealment, or other wrongful conduct on the part of the trustee or another, consents that the trustee or a third person may perform an act or refrain from performing an act, equity will not permit the beneficiary to allege thereafter that the conduct of the trustee or third person to which consent was given was a breach of the trust, or amounted to participation in a breach.  *  *  * He [the beneficiary] cannot come into equity and complain of an act which he has expressly sanctioned without violating the 'clean hands' doctrine of chancery. The trustee or the third person, or both, have by hypothesis acted on the consent of the *cestui*. It would be extremely unfair to allow him thereafter to contend that the act which he impliedly said would be rightful was in fact wrongful. He would be entrapping the opposite party." 4 Bogert, Trusts and Trustees, § 941; citing, among other cases, *Mann* v. *Day,* 199 Mich. 88.

In *Tuttle* v. *Gilmore,* 36 N. J. Eq. 617, 622, the writer of the court's opinion said:

"In my judgment it is clear, both from principle and authority, that the liability imposed on and accepted by a trustee may be limited by the terms of the instrument creating the trust. If there is such a clause of limitation the rule for measuring the trustee's liability is to be sought in that clause properly construed."

To the same effect see 1 Restatement, Law of Trusts, § 170 (s), and an excellent note citing many cases in 128 A. L. R. 4.

The trust instrument here in suit in authorizing self-dealing by the trustee limited the right to do so only by the provision "that all securities so purchased for such purpose shall be put in and charged to said trust fund at the then current market price." The undisputed testimony is that the trustee complied with the quoted provision in purchasing securities held by it. This constituted full compliance with the requirements of the trust instrument; and it was not further incumbent upon the trustee to inform the beneficiary of whether the trustee experienced a profit or a loss incident to such transactions. If the securities were purchased for this trust at "the then current market price" it cannot be said that the trustee profited at the expense of the trust estate, because the trustee might have disposed of its securities elsewhere "at the then current market price."

As to like purchases by the trustee of its own securities prior to the execution of the trust instrument, we are constrained to hold that in equity and good conscience under this record the final consummation of the written instrument which ultimately evidenced the rights and duties of the respective parties should be held to be only one incident of the transaction which should be viewed as a whole, and the rights and duties of the parties should be determined accordingly. Before the first investment in securities for this trust (November 29, 1929), Mrs. Way had mailed on November 15, 1929, to defendant trustee a letter received by it on or before November 27, in which she had returned the original draft of the trust instrument. With the exception of modifications hereinbefore noted she approved

the agreement as submitted to her. It contained the same provision as did the final draft of the trust instrument which empowered the trustee to invest in securities held by the bank. In a letter of October 26, 1929, from the bank to plaintiff the bank gave both plaintiff and her mother notice of its intention to invest the trust funds promptly, notwithstanding the written evidence of the trust had not been consummated. In this letter the bank officer wrote:

"Kindly say to your Mother that the net proceeds received from the sale of her 749 shares of Cities Service stock was $44,749.05.   *   *   *   As soon as possible, I will draw up a trust agreement for the investment of your Mother's funds and forward same for her signature and approval. *In the meantime, we will invest about $40,000 so that she may get the money working.*"

On October 29, 1929, a month before the trustee made the initial investments in the securities, Mrs. Way wrote a letter to the defendant bank in which she said:

"Received a radio from Mr. Decker saying my stock was sold at 60 and the money was in the bank. *   *   *   *You may now follow out what I wrote you in regard to establishing a trust.*"

"The mere fact that the settlor contemplates the subsequent execution of a formal trust instrument does not necessarily negative the present creation of a trust, if its terms are sufficiently indicated." 1 Scott on Trusts, § 26, p. 164.

We think it is clear on this record that Mrs. Way was in full accord with and fully authorized the action taken by the bank in the investment of the trust funds in advance of the actual execution of the trust instrument. Since the contemplated transaction in-

volved only personal property, it could have been consummated and made binding upon the parties if it had rested wholly in parol. *Economy* v. *Roberts*, 274 Mich. 484; *Boyer* v. *Backus*, 282 Mich. 593. As noted, by receipt of the first draft of the contemplated trust agreement prior to the first investment of the trust funds, Mrs. Way had considered and in effect by her letter approved of a written agreement to be later executed under the terms of which the trustee bank might purchase from its own holdings securities for this trust. As hereinbefore noted, this record does not disclose any fraud, bad faith or overreaching on the part of the trustee; but instead the contrary appears. It is true that transactions involving self-dealing by a trustee will be closely scrutinized (*In re Jenkins' Estate*, 260 Mich. 518); but in the instant case we are satisfied that the transactions of the trustee were obviously fair and as much in the interest of the trust as though the trustee had purchased all the securities for this trust from third parties, rather than from itself. As hereinbefore indicated we are of the opinion that under the terms of the trust instrument the trustee was not obligated to advise the settlor or beneficiary that securities from the trustee's own holdings were placed in this trust; nor that, if such investments for the trust were made at the ''then current market price,'' the transaction resulted in a profit or gain to the trustee over and above its investment in the security.

A fair and equitable view of this record leads to the conclusion that the initial investments, as well as the subsequent investments, by the trustee were made with the understanding on the part of Mrs. Way that purchases of securities for the trust might be made from holdings of the bank. She was given prompt notice of the kind and character of each in-

vestment.  For years she permitted the trustee to continue to manage the trust under the trust agreement which permitted self-dealing by the trustee. When in October, 1935, at the request of the trustee then in process of liquidation, Mrs. Way and plaintiff joined in revoking the trust, they gave to it a "complete and absolute discharge." The fact that still later and not many months before this suit was started in July, 1940, plaintiff and her mother were advised that the alleged irregularities hereinbefore noted afforded them a cause of action against the trustee whereby their losses might be shifted to the trustee or its liquidating agents presents a situation which has little or no equitable appeal.  There is no causal relation between the loss experienced by the trust and the trustee's failure to advise the settlor of its self-dealings or of its having experienced a profit by selling its securities to the trust "at the then current market price."  At the time the initial investments were made all parties concerned understood that self-dealing by the trustee was permissive under the contemplated trust arrangement. Under this record we hold that in so far as relief was decreed to plaintiff in consequence of self-dealings of the defendant bank prior to the execution of the trust instrument there must be reversal.

We are in full accord with the holding of the circuit judge that plaintiff is not entitled to recover because of the alleged failure of the trustee to exercise care in making investments for this trust or because the trustee failed to diversify the trust investments sufficiently.  As pointed out by the circuit judge in his findings the testimony discloses that the bonds purchased for this trust were the same kind and description of bonds held by the bank and disposed of by it to its other customers; that these bonds were properly investigated before being pur-

chased by the bank and that the trust committee of the bank approved of the securities before they were sold to the trust estate; and as hereinbefore noted the testimony discloses and the circuit judge found that at the time these securities were placed by the trustee in this trust account "the bond market was on the rise." As to the issue of a lack of diversity in the trust investments, even if it were to be assumed that there was a lack of diversity, the circuit judge in his opinion correctly pointed out that plaintiff is estopped from recovering in this belated case on that theory. We quote:

"I am of the opinion that the plaintiff is estopped from raising said objection due to the fact that when the bank made the original purchase of said bonds on November 29, 1929, they forwarded to Mrs. Way a complete list of said bonds, giving the amount of each bond and a detailed description thereof. Mrs. Way was from the beginning of the trust furnished with semi-annual accounts or reports, showing the receipts and disbursements of said trust estate, and an inventory of the securities on hand, with a detailed description thereof and their yield. Mrs. Way had full knowledge and information as to how the funds of said trust estate were invested and in what securities, and though she had ample opportunity to make complaint as to the manner of their investment she never did so, but continued to receive the income therefrom from time to time during the life of the trust. Plaintiff has therefore ratified the action of the trustee and is estopped from now raising the question that the trustee failed to diversify said investments."

The foregoing finds abundant support in *Herpolsheimer* v. *Michigan Trust Co.*, 261 Mich. 209; *Lawrence* v. *First National Bank*, 266 Mich. 199; *Postal* v. *Home State Bank for Savings*, 284 Mich. 220.

Plaintiff and cross-appellant complains that appellants at least to some extent presented to the trial court one theory of defense but on this appeal they have taken a different and somewhat inconsistent position. Even so, the defense urged in this Court is within the record as made and since plaintiff's right to a fair hearing has not been impaired, she has no ground of complaint.

In reaching decision herein we are mindful that many authorities might be cited wherein will be found general statements of law governing the relations and duties of trustees to beneficiaries which general statements may seem impossible of reconciliation with our holding. But in this connection we deem it sufficient to note that the liability of a trustee for alleged violation of his trust must be passed upon in the light of all the relevant facts in the particular case.

"In determining whether the trustee was guilty of negligence or violation of its trust duty, we must be governed by the circumstances of the particular case." *Lawrence* v. *First National Bank, supra,* 205.

"If there is no *mala fides,* nothing wilful in the conduct of the trustee, the court will always favor him." *In re Grammel's Estate,* 120 Mich. 487.

A decree may be entered in this Court dismissing plaintiff's bill of complaint, with costs of both courts.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, STARR, WIEST, and BUTZEL, JJ., concurred.