19 Mich. App. 155 (1969)
172 N.W.2d 468
In re KRAUSE ESTATE.
KRAUSE
v.
ATTORNEY GENERAL
Docket No. 6,023.
Michigan Court of Appeals.
Decided August 28, 1969.
John C. Cary, for petitioner Richard H. Krause.
Warner, Norcross & Judd (Platt W. Dockery and R. Malcolm Cumming, of counsel), for petitioner Adolph K. Krause.
Frank J. Kelley, Attorney General, Robert A. Derengoski, Solicitor General, and Stewart H. Freeman and Charles D. Hackney, Assistant Attorneys General, for the Attorney General.
Before: J.H. GILLIS, P.J., and R.B. BURNS and V.J. BRENNAN, JJ.
J.H. GILLIS, P.J.
The question for decision is whether the trustees of a testamentary charitable trust may purchase, pursuant to instructions in the trust instrument, trust assets at a profit. The facts are largely undisputed.
*158 Otto Krause died on May 27, 1950, leaving a will drawn and executed in 1948. Paragraph IV of the will established the "Community Service Trust," the corpus of which consisted of 3,200 shares of the testator's holdings of capital stock of Wolverine Shoe & Tanning Corporation, now Wolverine World Wide, Inc. Subsequent stock splits and stock dividends increased the corpus of the trust to 47,520 shares. Five charitable beneficiaries were to share in trust income. Upon termination, trust assets were to be paid over to the Public School District of Rockford, Michigan. Named as trustees were Richard and Adolph Krause, sons of Otto Krause.
In sub-paragraph IV(b) of his will, Otto Krause provided:
"The fact that they are the trustees of this trust shall not prevent my said sons, Adolph K. Krause and Richard H. Krause, or either of them, from purchasing all or any portion of the capital stock of Wolverine Shoe & Tanning Corporation, or of any of its successors, which shall be held in this trust at any time; Provided, however, that the purchase price of any of such stock so purchased by them, or either of them, shall be equal to the book value thereof at the time of such purchase * * * It is my will and I direct that in case of any proposed sale of all or any portion of such capital stock, my said sons, Adolph K. Krause and Richard H. Krause, shall have the prior right, which right shall be equal as between them, to purchase any of such stock at the then book value thereof, payment for such stock to be completed in not to exceed one year from the date of the contract for the purchase thereof."
Pursuant to their power of purchase under the will, Richard and Adolph Krause petitioned Kent county probate court for an order authorizing their purchase of the 47,520 Wolverine shares at current *159 book value. Notice was given to all charitable beneficiaries but none appeared. The petition was opposed, however, by the Attorney General for the State of Michigan, a party to the trust by virtue of statute.[1] After a hearing, the purchase was approved at a price of $6.20 per share, the book value of Wolverine shares as found by the probate court. The Attorney General's appeal to Kent county circuit court was met by what was broadly termed a motion to dismiss the appeal. After a hearing on the motion, the circuit court ordered the appeal dismissed. Upon leave granted, the Attorney General appeals.
Throughout the proceedings below, the Attorney General objected to the profit realized by Richard and Adolph Krause upon purchase of the corpus shares. We are informed that the market value of Wolverine stock exceeds its book value and that, were a purchase at book value approved, the trustees of the "Community Service Trust" would reap a personal profit at the expense of the charitable beneficiaries. It is the position of the Attorney General that such a purchase is barred by general principles of trust administration and by statute. The validity of the trust itself, qua charitable trust, is not before us. Cf. Love v. Sullivan (1966), 5 Mich App 201.
Firmly established in our jurisprudence is the rule which places trustees under a duty of loyalty to administer the trust solely in the interest of the beneficiaries. In his brief, the Attorney General reminds us of the words of Mr. Justice COOLEY in Sheldon v. Estate of Rice (1874), 30 Mich 296, 300, 301:
"It has been uniformly held that administrators, or other persons standing in the position of trustees, *160 are not to be suffered, either directly or indirectly, to acquire interests in, or bargain for benefits from the property which, in their relation as trustees, they hold, manage, control or sell for others."
See also, 1 Restatement Trusts, 2d, § 170, p 364; Sloan v. Silberstein (1966), 2 Mich App 660, 673. So frequently is Meinhard v. Salmon (1928), 249 NY 458 (164 NE 545), acknowledged that quotation therefrom is unnecessary. Mr. Justice Cardozo's words constitute hornbook law.
Nevertheless, it is also true that to most general rules there are exceptions. In Sheldon, supra, p 300, it was said:
"The rule is clear, but it is still possible that it may not be applicable to this case, in view of its peculiar facts."
In this case, we discern a peculiar fact. By subparagraph IV(b) of his will, Otto Krause specifically empowered his sons to purchase Wolverine shares at book value. Any profit upon purchase of the stock accrued to Richard and Adolph Krause by the terms of the trust. For the purpose of argument, the Attorney General concedes that the settlor intended to empower his trustees to deal with the stock at a profit. It is in the light of this peculiar fact that we consider the merits.
In 90 CJS, Trusts, § 248(e), p 269, we find stated:
"By the terms of the trust, the trustee may be permitted to do what, in the absence of such provision in the trust instrument, would be a violation of his duty of loyalty; and within limitations, the trustee may be authorized by the trust instrument to act in matters involving a divided interest. So, in the absence of any question of public policy, a settlor may validly authorize self-dealing by a trustee, such as purchase of property for the trust from himself as an individual * * *"
*161 Of like import is 54 Am Jur, Trusts, § 453; p 361:
"In the absence of a statute forbidding the same, the terms of a trust may validly provide and confer authority upon the trustee to buy property owned or held by the trust estate."
Professors Scott and Bogert are of the same view. See Scott, "The Trustee's Duty of Loyalty," 49 Harv L Rev 521, 536 (1936); Bogert, Trusts and Trustees (2d ed), § 543, pp 494, 495.
Case authority also sustains the position that self-dealing when authorized in the trust instrument is permissible. Boston Safe Deposit & Trust Co. v. Lewis (1944), 317 Mass 137 (57 NE2d 638); Rosencrans v. Fry (1953), 12 NJ 88 (95 A2d 905); Appeal of Burke (1954), 378 Pa 616 (108 A2d 58). Even in New York, see O'Hayer v. de St. Aubin (1968), 30 App Div 2d 419 (293 NYS2d 147), the rule of undivided loyalty may be relaxed by appropriate language in the trust instrument, Meinhard v. Salmon, supra, notwithstanding.
The Attorney General would have us distinguish the above authorities on the ground that here the issue is controlled by statute. The provision relied on is § 37 of chapter IV of the probate code of 1939:
"Except with the written approval of the probate court, a fiduciary in his personal capacity shall not engage in any transaction whatsoever with the estate which he represents, nor shall he invest estate funds in any company, corporation or association with which he is affiliated, other than as a bondholder or minority stockholder. A fiduciary in his personal capacity shall not personally derive any profit from the purchase, sale or transfer of any property of said estate." CL 1948, § 704.37 (Stat Ann 1962 Rev § 27.3178 [288]).
An argument is made that this statutory prohibition against self-dealing by a fiduciary has been *162 enacted in the public interest and cannot be relaxed by testamentary declaration. We are cited to In re Tolfree Estate (1956), 347 Mich 272.
Reliance upon In re Tolfree Estate is misplaced. Since testamentary instructions were there in accord with statutory requirements, no issue of apparent conflict between settlor intent and statutory requirement was before the Court. Although the Court construed § 37 as indicative of the public policy of this state, the decisive question here is the content of that policy.
Nor are we persuaded that, if the legislature intends relaxation of a statutory prohibition by the terms of a trust, it explicitly so provides. The Attorney General argues that the absence of a specific provision allowing self-dealing when authorized by the terms of a trust is significant. Equally significant is the absence of an explicit statutory provision condemning attempted modification of statutory requirements by settlor declaration. Cf. NY Decedent Estate Law § 125; In the Matter of the Estate of Schechter (1962), 35 Misc 2d 371 (229 NYS2d 702).
The prohibition against self-dealing expressed in § 37 is but a restatement of the common-law rule of the duties imposed upon trustees. We hold that § 37 is no bar to trustee purchase of corpus assets at a profit when the purchase is specifically authorized by the terms of the trust. We approve the language of the circuit court below:
"The Michigan statute contained in § 37 of chapter IV of the probate code of 1939 * * * is but a restatement of the common-law rule of the duties imposed upon trustees. As such, the exceptions to the common-law rule must be read into the statute. Statutes are to be construed with reference to the common law, and it is never to be presumed that the legislature intended to make any innovation of *163 the common law further than was necessary to carry the act into effect."
In Newton v. Old-Merchants National Bank & Trust Co. (1941), 299 Mich 499, a trustee purchased securities held by it for the trust estate, a self-dealing transaction. By the terms of the trust, however, the settlor had expressly consented to the transaction. It was said (pp 508, 509):
"The provision permitting self-dealing by the trustee was plainly and fairly set forth in the trust instrument. There is no showing that the trustee in its dealings under this provision of the trust instrument was guilty of any fraud, deceit, overreaching or any misconduct of any character. Under the circumstances the permissive self-dealing clause contained in the trust instrument is binding and conclusive of the right of the plaintiff to recover for losses sustained on the investments made subsequent to the execution of the trust instrument."
Here, as in Newton, there has been no showing that Richard and Adolph Krause dealt other than fairly with the trust estate. The purchase price tendered for Wolverine shares was the very price established by the express terms of the trust.
Considerations of public policy are also raised and said to bar approval of this purchase. It is argued that such transactions, if approved, would offer a means of evasion of state and federal estate inheritance taxes. The short answer is that provided in Goodrich v. City National Bank & Trust Company of Battle Creek (1935), 270 Mich 222, 232:
"The government has ample authority to conserve its power of taxation. It can, and must, and does, provide against evasion. Trusts may have different private and public effect. Burnet v. Guggenheim (1933), 288 US 280 (53 S Ct 369, 77 L Ed 748). There is no occasion for the courts to avoid *164 private rights in aid of the collection of taxes by setting up conditions which the legislature did not deem necessary."
We discern no reason in public policy why a settlor should be precluded from limiting his charitable grant by permitting his trustee to purchase corpus assets at a price established in the trust instrument. In establishing the "Community Service Trust," Otto Krause made a gift to various charitable beneficiaries. By permitting his sons to purchase Wolverine shares at book value, Otto Krause, in effect, limited the size of his gift to $6.25 per share. Since the named beneficiaries had no right to demand that any gift be made, it cannot be said that they are disadvantaged by enforcement of a limitation clearly expressed in the charitable grant. Cf. Bogert, Trusts and Trustees (2d ed), § 542, pp 460, 461. Finally,
"* * * lest it be lost sight of, this stock was testator's to dispose of as he chose. If, in effect, he desired to deprive his trust estate of the benefits of the doctrines in the cases that forbid trustees acting under circumstances that involve what is called `divided loyalty', he had the perfect right to do so. Matter of Balfe's Will (1935), 245 App Div 22 (280 NYS 128, 130). * * * Such a course `did not impinge public policy or involve the doing of anything malum in se or malum prohibitum.'" In re Dow's Will (1955), 32 Misc 2d 415 (156 NYS 2d 804, 808, 809).
A procedural issue remains. In his claim of appeal to circuit court, the Attorney General urged that the probate court erred in ruling that Otto Krause intended to confer upon his sons a right of purchase at a profit. Before the circuit court and on this appeal, it was suggested that the use of "book value" as a purchase price was, under prevailing *165 circumstances, only a substitute for what Otto Krause actually intended  namely, a fair price. On oral argument, several rationales for such an interpretation were offered. A complaint was also made that circuit court had deprived the Attorney General of an opportunity to present evidence in support of his contention.
A fair reading of the entire will negates the contention that the testator's intent was other than to enable his sons to purchase the stock at a profit. Nevertheless, we do not rest on this ground. On appeal to the circuit court, the Attorney General was entitled to a trial de novo. GCR 1963, 701.1, 701.10. His claim of appeal, in effect, alleged that a material fact, testator's intent, was in dispute. Petitioners then filed a motion to dismiss, stating as a ground therefor that Otto Krause's will specifically negated the Attorney General's contrary allegation. We construe this portion of what petitioners broadly termed a "motion to dismiss" as made pursuant to GCR 1963, 117.2(3). The motion was for summary judgment on the ground that there was no genuine issue regarding testator's intent. Assuming without deciding that extrinsic evidence would have been admissible in support of his interpretation of testator's intent [see In re McLennan's Estate (1914), 179 Mich 595; In re Lowrie's Estate (1940), 294 Mich 298], it was then incumbent upon the Attorney General to provide the circuit court with some evidentiary proof in support of his allegation. Durant v. Stahlin (1965), 375 Mich 628. This was not done. As this Court has previously noted, "Conjecture cannot substitute for fact nor conclusion for admissible evidence," Dionne v. Pierson Contracting Company (1965), 2 Mich App 134, 139. The complaint that the circuit court deprived the Attorney General of an opportunity to *166 present his evidence comes too late. We conclude that the circuit court properly dismissed the claim of appeal. Cf. Hoehner v. Western Casualty & Surety Company (1967), 8 Mich App 708.
Affirmed. No costs, a public question being involved.
All concurred.
NOTES
[1] MCLA § 14.251 (Stat Ann 1969 Cum Supp § 26.1200[1]).