[No. 2679-1.     Division One.     June 3, 1974.]

*In the Matter of the Estate of* MARGARET A. VANCE, *Deceased.*
VANCE CLIPSON, *Appellant,* v. GEORGE VANCE *et al.,*
*Respondents.*

*Elvidge, Veblen, Tewell, Bergmann & Taylor* and *James H. Krider* and *John Veblen,* for appellant.

*Williams, Lanza, Kastner & Gibbs, DeWitt Williams, P. Arley Harrel, Graham, McCord, Dunn, Moen, Johnston & Rosenquist, W. H. Jaynes, Jr.,* and *Michael J. Swofford,* for respondents.

SWANSON, C.J.—Is it a breach of trust for executors of an estate to appeal an Internal Revenue Service agent's determination of the value of certain estate stock being purchased by the coexecutor, pursuant to an option contained in the will, if the net effect of a successful appeal to the tax court would be to (1) reduce the cost of the stock to the coexecutor purchaser and thereby (2) reduce the net amount for distribution to the heirs? The trial court ruled that it was not, under the terms of the will and the facts of this case. We agree.

The facts necessary to an understanding of the appeal are as follows: Margaret A. Vance's will named her son George Vance and the National Bank of Commerce as coexecutors of her estate, and the third codicil to her will granted George Vance the right to purchase her 560 shares of the capital stock in the Vance Corporation. If the option was exercised and the purchase consummated, the proceeds of the sale would be substituted for the stock as an asset of the estate and distributed in lieu of the stock to the heirs. The third codicil also provided that in the event George Vance elected to exercise his option to purchase the stock,

the purchase price shall be the value of said stock as established for Federal Estate tax purposes,

pursuant to the following two-step procedure:

(a) Within ten days after his election to purchase said stock he shall pay an amount in cash equal to the appraised value of said stock as shown on the Inventory and Appraisal filed in my estate proceedings.

(b) The balance due, if any, shall be paid in cash within 30 days after the value of said stock for Federal Estate tax purposes (or State inheritance tax purposes if no Federal Estate tax return is filed) is finally determined.

George Vance did elect to exercise his option to purchase the stock and made the initial payment as provided in the will based on the value set by the court-appointed appraiser which was shown in the inventory to be $200 per share. Thereafter, an Internal Revenue Service agent, in making his preliminary audit for federal estate tax purposes, valued the stock at $1,000 per share. The coexecutors hired a tax expert and sought to appeal the ruling by the IRS agent to the United States Tax Court, claiming that the value of the stock was no more than $135 per share.

At this point, one of the heirs, Vance Clipson, filed his petition to prevent the appeal, or to remove the executors on the ground that the tax court action, which was aimed at reducing the value of the stock, was not authorized by the terms of the will and was in direct conflict with the interest of the heirs. Clipson argued that, contrary to the usual situation, any effort to reduce the value of the stock in question for federal estate tax purposes would harm the heirs because even though such reduction would lessen the tax burden it would also diminish the size of the net estate available for distribution and thus benefit only the coexecutor George Vance as purchaser of the stock. After a trial on the merits, the court concluded that the action contemplated by the executors was consistent with the terms of the will which manifested an intent by the testatrix to obtain a fair valuation of the stock and, therefore, even though the net effect of such action might be to lessen the amount of each heir's distributive share, such a possible effect was contemplated by the testatrix such that no conflict of interest existed amounting to a breach of trust. The trial court dismissed the petition, and Vance Clipson appeals.

Appellant's first assignment of error is to portions of one finding of fact and two conclusions of law indicating that the testamentary intent of Margaret Vance included contemplation of a potential conflict between the interest of her son, as a coexecutor and optionee of a right to purchase stock, and that of the heirs and legatees, and recognized that an appeal to the tax court might be necessary so that the value of the stock in controversy could be "finally determined."[1] Further, appellant argues that the phrase, "is finally determined" does not refer to the last possible determination which could be made. In this regard, appellant directs us to the language of the codicil which contemplates a balance to be paid for the stock after the federal estate tax valuation and argues that it is apparent that the testatrix did not contemplate a tax appeal which might result in a valuation of the stock below appraisal.[2]

[1] "Margaret A. Vance was a knowledgeable person not only with respect to valuation procedure with respect to shares of stock of the Vance Corporation, but also knowledgeable as to the character and personality and situation of her heirs and legatees. She designated George F. Vance as a Co-Executor. She could not have been oblivious to the potential conflict of interest situation. She was aware of valuation procedures, knew that as Co-Executor he would have a voice in the determination of the proper valuation to be placed upon the stock." Finding of fact No. 6, in part.

". . . It is the Co-Executors' duty to see that there is a final determination so that the testatrix's desire that George Vance acquire the stock at the fair market value is carried out and not that he acquire the shares at something other than the value of the shares involved." Conclusion of law No. 3, in part.

"The phrase in the Codicil 'as finally determined' as contained in Article I 3 (b) of the Third Codicil is not ambiguous and even without said words the language 'as established for federal estate tax purposes' also contemplates the realities of the everyday world and that values for estate tax purposes are often determined in courts rather than by some less final method. It rules out any intermediate determinations either by way of some appraisal that is made and does not become final or some designation by an agent of the Internal Revenue Service." Conclusion of law No. 4.

[2] We note that the respondent executors are seeking tax court approval of a valuation of the stock at $135 per share rather than at the $200 per share figure appearing in the inventory. We express no

■ Appellant's arguments, though persuasive and ingenious, cannot be accepted. The ultimate consideration in the probate of a will is the intent and direction of the testatrix. RCW 11.12.230; *In re Estate of Riemcke*, 80 Wn.2d 722, 497 P.2d 1319 (1972); *In re Estate of Shaw*, 69 Wn.2d 238, 417 P.2d 942 (1966); *In re Estate of Johnson*, 46 Wn.2d 308, 280 P.2d 1034 (1955). As was stated in *Johnson* at page 312:

> In construing a will, the courts will seek for and give effect to the intent, scheme, or plan of the testator if it be lawful. [Citations omitted.]
>
> The testator's intent, scheme, or plan must be ascertained from the four corners of the will, if possible. [Citations omitted.]

We stated more recently in *In re Estate of Patton*, 6 Wn. App. 464, 467, 494 P.2d 238 (1972):

> In the construction of a will the fundamental rule is that the intent of the testator is paramount and is to be determined from the four corners of the will when read as a whole. [Citations omitted.]

We also stated at page 468:

> Words used in a will are to be understood in their ordinary sense if there is nothing to indicate a contrary intent. *In re Estate of Price*, [75 Wn.2d 884, 454 P.2d 411 (1969)]; *In re Estate of Levas*, 33 Wn.2d 530, 206 P.2d 482 (1949).

■ It must also be borne in mind that the intention of the testatrix is to be determined if possible from the terms of the will itself, but in determining the meaning of ambiguous language employed by the testatrix to accomplish that intent, the court may consider extrinsic evidence of the facts and circumstances surrounding the writing of the will. *In re Estate of Riemcke, supra; Anderson v. Anderson,* 80 Wn.2d 496, 495 P.2d 1037 (1972); *In re Estate of Price,* 75 Wn.2d 884, 454 P.2d 411 (1969); *In re Estate of Lidston,* 32 Wn.2d 408, 202 P.2d 259 (1949). Assuming arguendo that

opinion herein as to the propriety of a reduction in valuation below $200 per share for purposes of George Vance's purchase of the stock.

the crucial language in the third codicil of Margaret A. Vance's will is ambiguous, the trial court's finding of fact No. 6 which reflects the testimony of George Vance respecting his mother's knowledge of estate procedures and valuation methods properly supports the trial court's conclusion as to the meaning of language in the third codicil referring to the value of stock "established for Federal Estate tax purposes" and providing for payment by George Vance after "the value of said stock for Federal Estate tax purposes (or State inheritance tax purposes if no Federal Estate tax return is filed) is finally determined."

We are of the opinion, however, that the trial court's findings of fact and conclusions of law regarding the testatrix's intent do not depend upon testimony of George Vance, but rather upon the language of the will itself. In this context, finding of fact No. 6 is superfluous. It is apparent that the words "is finally determined" do not refer to the last possible determination any more than they refer to the initial determination but, rather, refer to a determination consistent with reasonable and ordinary practice in handling the tax aspects of the administration of estates. It is obvious that if the stock were to be distributed in kind to the heirs with no option to purchase given to George Vance, the heirs would have welcomed and encouraged the executors to pursue a tax appeal so as to lessen the tax burden. It is only the circumstance of George Vance exercising his option to purchase that apparently has caused the appellant and other heirs to desire the highest valuation, regardless of the tax consequences, because the net effect of such a valuation is to augment the size of their distributive shares. The trial court correctly concluded that the phrase "is finally determined" is not ambiguous and "contemplates the realities of the everyday world and that values for estate tax purposes are often determined in courts rather than by some less final method." Conclusion of law No. 4, in part.

Appellant also contends, however, that the tax court appeal involves a direct conflict of interest situation because

the effect of such action, if successful, will be to benefit the coexecutor George Vance at the expense of the best interests of the heirs. Appellant asserts the appeal to the tax court constitutes a breach of trust in violation of RCW 11.68.030 which provides, in part:

> If the person named in the will fails to execute the trust faithfully and to take care and promote the interest of all parties, then upon petition . . . of any of the heirs . . . the court shall cite such person to appear before it, and if, upon hearing of the petition it appears that the trust in such will is not faithfully discharged, and that the parties interested . . . have been or are about to be damaged by the doings of the executor, then, in the discretion of the court, administration may be had and required as is required in the administration of estates, and in all such cases the costs of the citation and hearing shall be charged against the party failing and neglecting to execute the trust as required in the will.

■■ At first blush, appellant's position might seem to be unassailable in view of the many strong statements made in the cases and reflected in the statutes regarding the trust position occupied by the executor of an estate. Moreover, the tax court appeal here in question also might appear to be in conflict with the general rule that a trustee or executor cannot deal on behalf of himself in the administration of estate property. In this connection, it is well established in Washington that an executor of the estate of a deceased person acts in a trust capacity and must conform to laws governing a trustee. *In re Estate of Johnson,* 187 Wash. 552, 60 P.2d 271, 106 A.L.R. 217 (1936). As was stated in *Johnson* at page 554:

> The law is that a trustee is under a duty to the beneficiary to administer the trust solely in the interest of such beneficiary, and, in doing this, an undivided loyalty to the trust is required. The trustee is not permitted to make a profit out of the trust. [Citations omitted.] An executor, executrix or administrator of an estate of a deceased person acts in a trust capacity, and must conform to the rules governing a trustee. [Citations omitted.]

It is stated in 54 Am. Jur. *Trusts* § 453 (1945) at page 359:

A trustee, by virtue of his relationship, owes undivided loyalty to his trust and to the beneficiaries thereof; he is to act exclusively in their interest and refrain from engaging in self-dealing. To this end he should and must avoid all situations and transactions that tend to call his good faith into question and to create in himself interests conflicting with those of the beneficiaries of the trust.

In the case at bar, however, the court found:

There has been no evidence of any kind with respect to any departure from the provisions in the Will by the Co-Executors or either of them, and there is nothing that would justify this Court either in interfering with the Co-Executors' appeal to the Tax Court of the United States or justifying either transferring this estate from a nonintervention status to an administration status, subject to the order of the Court, or to cause the removal of the Co-Executors or either of them.

Finding of fact No. 7. The trial court's finding of fact is based upon substantial evidence and we uphold it. It supports the conclusion that:

A decedent has the right to designate who will administer an estate and is not inhibited by an actual or potential conflict of interest, but can designate someone to act in circumstances that will involve the conflict relationship, and that is within the right of the decedent. There can be a conflict situation which is not sufficient to justify removing executors unless there is also misconduct involved. An apparent or alleged conflict of interest situation is not sufficient to grant the remedy sought by the Petition herein.

Conclusion of law No. 3, in part.

The trial court's conclusion rests upon a substantial body of law which recognizes the right of a testator or trustor to authorize a conflict of interest between the executor and the heirs, or the trustee and the beneficiaries. This general principle is stated in 54 Am. Jur. *Trusts* § 454 (1945) at page 361:

In the absence of a statute forbidding the same, the terms of a trust may validly provide and confer authority

upon the trustee to buy property owned or held by the trust estate. In the exercise of such authority the trustee in purchasing from himself must employ the highest degree of good faith and care, diligence, and skill.

Moreover, it appears that the creator of a trust or the testatrix of a will may, in the trust instrument or will, properly grant to the trustee or executor the right to purchase, in his own behalf, trust property even though a statute explicitly prohibits the trustee's purchase of trust assets in the absence of court approval. *See* Annot., 39 A.L.R.3d 836, 841 (1971); *In re Estate of Krause,* 19 Mich. App. 155, 158, 172 N.W.2d 468 (1969); *Central Nat'l Bank v. Brewer,* 8 Ohio Misc. 409, 220 N.E.2d 846 (1966); *but see Walters v. Wannemacher,* 6 Ohio App. 2d 226, 217 N.E.2d 695 (1964).

In *In re Estate of Krause, supra,* Otto Krause's will provided that his trustees, who were also his sons, should not be prevented from purchasing all or any portion of the capital stock of Wolverine Shoe & Tanning Corporation and provided that the purchase price " 'shall be equal to the book value thereof at the time of such purchase   *   *   *' " The court noted that the market value of Wolverine stock exceeded its book value so that a purchase at book value would allow the trustees to reap a personal profit at the expense of the beneficiaries which happened to be charities. Recognizing the general rule that trustees are under a duty of loyalty to administer the trust solely in the interest of the beneficiaries and in spite of the statute prohibiting a fiduciary from personally deriving any profit from the purchase, the court, nevertheless, permitted the testator's sons and trustees to buy the stock even though it resulted in a substantial profit to the trustees and diminished the amount of the trust estate.

The court in *Krause* quoted with approval at page 164 from *In re Dow's Will,* 32 Misc. 2d 415, 156 N.Y.S.2d 804, 808 (1955), as follows:

Finally,
"*   *   * lest it be lost sight of, this stock was testator's

to dispose of as he chose. If, in effect, he desired to deprive his trust estate of the benefits of the doctrines in the cases that forbid trustees acting under circumstances that involve what is called 'divided loyalty', he had the perfect right to do so. [Citation omitted.]

Such language is equally applicable to the instant case where Margaret Vance, by her third codicil to her will, chose to give her only surviving son George Vance the option to purchase all of her stock in the Vance Corporation at a price to be determined pursuant to the terms of the will. It is interesting to note that the heirs do not object to the purchase of the stock by George Vance, but only to the steps taken to determine the price to be paid pursuant to the provisions of the will; however, as the trial court correctly concluded:

It is the Co-Executors' duty to see that there is a final determination so that the testatrix's desire that George Vance acquire the stock at the fair market value is carried out and not that he acquire the shares at something other than the value of the shares involved.

Conclusion of law No. 3, in part. In a case presenting facts strikingly similar to those involved here, *Robertson v. Hert's Adm'rs,* 312 Ky. 405, 408, 227 S.W.2d 899 (1950), an option to purchase stock provided that a particular trustee could purchase certain stock at the death of the settlor "at the price at which the stock is finally valued by the federal government for federal estate tax purposes, . . ." The court recognized the general rule that a trustee cannot deal for himself in respect to the trust property, but in the absence of a statute to the contrary, the court said at page 412:

[T]he creator of a trust may confer upon a trustee the right to deal for himself with respect to trust property. The purchase by the trustee of the trust property, under a grant of authority in the trust instrument, is valid if the price paid is fair and the trustee is not guilty of bad faith.

*See In re Estate of Frolich,* 112 N.H. 320, 295 A.2d 448 (1972); *In re Burke,* 378 Pa. 616, 108 A.2d 58, 47 A.L.R.2d

1367 (1954); *In re Foss,* 282 App. Div. 509, 125 N.Y.S.2d 105 (1953); *Rosencrans v. Fry,* 12 N.J. 88, 95 A.2d 905 (1953); *In re Estate of Wallace,* 299 Pa. 333, 149 A. 473 (1930). *See also* 2 A. Scott, *Trusts* § 170.9 (3d ed. 1967); 90 C.J.S. *Trusts* § 248 (1955). Moreover, the common-law rule which recognizes the right of a testator or trustor to authorize a conflict of interest is recognized in RCW 30.24.090 which states:

> *Unless the instrument creating the trust expressly provides to the contrary,* any fiduciary in carrying out the obligations of the trust, may not buy or sell investments from or to himself or itself or any affiliated or subsidiary company or association.

(Italics ours.) *See also* 1 Restatement (Second) of Trusts § 170 (1959).

It is therefore abundantly clear that a testator may authorize his executor or trustee to purchase property from the estate on such terms as may be provided, even though such a purchase may involve a conflict of interest or work to the detriment of the heirs. Here, the court found that the testatrix contemplated such a potential conflict but, nevertheless, specifically provided in her will the means for her son as coexecutor to buy her stock. We see no reason why such a provision should not be upheld, even though the method of finally determining or ascertaining the stock's purchase price, based upon its value for federal estate tax purposes, might include an appeal to the tax court. If this method of ascertaining the stock's valuation results in a diminution of the heirs' distributive shares, such must be deemed to be the result of the testatrix's specific intent. Under the circumstances, we cannot say that an appeal to tax court constitutes an unfair, inequitable or unconscionable action on the part of the coexecutors in relation to the heirs.

We therefore conclude that the trial court correctly determined, based upon substantial evidence, that the executors were following a course consistent with the will of

Margaret A. Vance in determining the purchase price to be paid by George Vance for the stock in question and that therefore there was no misconduct by the executors constituting a breach of trust.

Appellant also assigns error to certain evidentiary rulings of the trial court and to the trial court's failure to award attorney's fees and costs to him. We have reviewed the evidentiary questions raised and find them to be without merit; in any event, they are immaterial to the issues presented on this appeal and otherwise are nonprejudicial to appellant, and therefore no purpose would be served by discussing them in this opinion. The matter of attorney's fees and costs under the circumstances presented is within the discretion of the trial court, and we find no evidence that such discretion was abused.

The judgment is affirmed.

HOROWITZ and JAMES, JJ., concur.